D. Angus Lee, OSB No. 213139
ANGUS LEE LAW FIRM, PLLC
9105 NE Highway 99, Suite 200
Vancouver, WA 98665-8974
(360) 635-6464
angus@angusleelaw.com

Endel Kolde
(pro hac vice)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Suite 801
Washington, D.C. 20036
(202) 301-1664
dkolde@ifs.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| BRUCE GILLEY,<br><br>*Plaintiff,*<br><br>v.<br><br>TOVA STABIN, Communications Manager, University of Oregon Division of Equity and Inclusion, in her official and individual capacities,<br><br>*Defendant.* | Case No. 3:22-cv-01181-HZ<br><br>PLAINTIFF'S REPLY RE MOTION TO EXPEDITE PRELIMINARY INJUNCTION HEARING AND EARLY DISCOVERY<br><br>*EXPEDITED HEARING REQUESTED* |

REPLY RE MTN. TO EXPEDITE - 1

REPLY

### 1. Gilley's request to expedite should be viewed in the context of Defendant's serial delays

Deputy Counsel Douglas Park gives a selective and self-serving accounting of Plaintiff's counsel's efforts to notify the UO legal counsel's office about this lawsuit. He admits to having had actual notice of the lawsuit the day after it was filed. ECF No. 19 at 2. He claims, however, that he did not see Plaintiff's counsel's August 12 email to him until August 16. *Id.* at 2; ECF No. 19-3 at 7. In that email, Gilley's counsel asked UO legal counsel communicate with him about scheduling the MPI hearing. *Id.*

But Mr. Park's declaration glosses over the fact that Plaintiff's counsel also sent that same email with the zip file to the legal counsel's office general email account: gcounsel@uoregon.edu. This is the primary email address that UO publicizes as a method for contacting the legal counsel's office in the event "there is a threat of a lawsuit (or actual litigation filed) against the university or its personnel arising out of their university function[.]"

REPLY RE MTN. TO EXPEDITE - 2

> **When should you contact us?**
>
> It is important that the Office of the General Counsel be informed anytime there is a threat of a lawsuit (or actual litigation filed) against the university or its personnel arising out of their university function, whenever you receive a subpoena or summons for university-related records or testimony, and whenever a government agency gives notice that it is conducting an inquiry or investigation involving the university.
>
> **Contact Information**
>
> **Main Office:** 541-346-3082
> **Fax:** 541-346-6110
> **E-mail:** gcounsel@uoregon.edu
>
> **Mailing Address:**
> 1226 University of Oregon
> Eugene, OR 97403-1226

UNIV. OF OREGON, *Contact Us,* https://generalcounsel.uoregon.edu/contact (last visited Aug. 26, 2022). Mr. Park's declaration does not explain why no one else in the legal counsel's office read or thought to acknowledge to the August 12 email. It is understandable that Plaintiff's counsel would interpret this passivity as an attempt to slow the case down for tactical reasons.

## 2. Gilley's counsel sought to confer by telephone while defense counsel avoided engaging constructively

In the email communications between counsel starting on August 12 and culminating on August 17 (ECF No. 19-3), Gilley's counsel requested that defense counsel confer with him about MPI scheduling no fewer than four times and scheduled a phone conference at which no one from the defense appeared. ECF No. 11-1 at 4 (¶16). The record demonstrates that Plaintiff's counsel repeatedly attempted to confer and was met with the setting of preconditions and other

REPLY RE MTN. TO EXPEDITE - 3

passive-aggressive behavior. To now assert that Plaintiff's counsel's statement is "false and misleading" or "simply false" (ECF No. 5 at 5-6) is hyperbolic. It is also an attempt to shift the focus away from defense counsels' serial delaying tactics. Finger pointing aside, it appears that any conferral would have been futile because the parties fundamentally disagree about the trajectory of the case.

### 3. Defense counsel's staff-person "Reggie" threatened to throw Plaintiff's filing in the trash at Perkins Coie's Portland office

Defense counsel's lack of cooperation is further illustrated by the behavior of Perkins Coie's front-desk staff when Richard Hassler served copies of this motion and the supporting declaration. ECF No. 13 at 1-2. An adult male named "Reggie" refused to accept service and told Hassler the "paperwork would just be thrown into the trash." *Id.*

Per LR 83-8(a): "Counsel must cooperate with each other, consistent with the interests of their clients, in all phases of the litigation process and be courteous in their dealings with each other[.]"[1] Threatening to throw legal documents in the trash is neither courteous nor cooperative. Nor does it vitiate service.

---

[1] Per Oregon Rule of Professional Conduct 5.3, defense counsel is responsible for ensuring that non-lawyer staff comport themselves in a professional manner.

REPLY RE MTN. TO EXPEDITE - 4

### 4. Exhaustion of state remedies is not required to raise claims arising under the U.S. Constitution

Defendants claim that Gilley's counsel should have contacted them to resolve matters without filing suit, but it is well established that a plaintiff need not exhaust state administrative remedies to seek relief under § 1983 vindicating his constitutional rights. *Pakdel v. City & Cty. of S.F.,* 141 S. Ct. 2226, 2230-31 (2021) (it is a settled rule that exhaustion of state remedies is not a prerequisite to an action under § 1983); *Knick v. Twp. of Scott,* 139 S. Ct. 2162, 2172-73 (2019) (federal remedies are directly available for takings claims "as for any other claim grounded in the Bill of Rights."); *Bonelli v. Grand Canyon Univ.,* No. 20-17415, 2022 U.S. App. LEXIS 6346, at *16 (9th Cir. Mar. 11, 2022). State officials do not get to specify how citizens chose to vindicate their federal civil rights and Gilley was entitled to make a legal point about freedom of expression by filing this case.

### 5. Defendant's name-calling about "right-wing allies" is undignified and illustrates UO's ongoing hostility toward dissenting viewpoints

Defendant's characterization of the Institute for Free Speech (IFS) as a "conservative political organization" and allied with "right-wing" news outlets amounts to school-yard behavior and labeling. *See* ECF No. 18 at 2, 7. It is also discourteous and wholly divorced from the merits of the case.

IFS is a non-partisan 501(c)(3) that "promotes and defends the First Amendment rights to freely speak, assemble, publish, and petition the government through strategic litigation, communication, activism, training, research, and education." IFS, *About Us,* https://www.ifs.org/about-us/ (last visited Aug. 26, 2022).

REPLY RE MTN. TO EXPEDITE - 5

First Amendment Rights belong to all Americans, not just conservatives or "right wingers." Indeed, IFS has worked with organizations with a diversity of viewpoints, including the ACLU and other groups UO officials might like better than Gilley or IFS. *An Open Letter in Support of the Uniform Law Commission's Uniform Public Expression Protection Act,* https://www.ifs.org/wp-content/uploads/2022/06/Coalition-Letter-for-ULC-Model-Act_6.23.22.pdf (last visited Aug. 26, 2022) (listing signers including the ACLU, IFS, League of Conservation Voters, Motion Picture Association). Similarly, as a non-profit seeking to vindicate free speech rights, it should not be surprising that IFS would routinely issue a press release after it files a First Amendment lawsuit. Many organizations do the same.

IFS has no control over which news outlets choose to cover its activities and to suggest otherwise is irresponsible and lacks any evidentiary foundation. In fact, The Oregonian, not a known hotbed of "right-wingers," was one of the first outlets to cover this lawsuit. Betsy Hammond, *PSU professor critical of equity initiatives sues to force UO equity Twitter account to unblock him,* https://bit.ly/3PVAau1 (Aug. 12, 2022). IFS's activities have similarly been covered in publications such as the Philadelphia Inquirer, Wall Street Journal, Atlanta Journal-Constitution, and St. Louis Post-Dispatch. IFS is not required to litigate in secret or protect the feelings of people who enact and defend censorship. It is understandable that state officials do not like a spotlight being cast on their illegal behavior, but that is a feature of a free press, not a bug.

REPLY RE MTN. TO EXPEDITE - 6

Similarly, Defendant's labeling behavior illustrates the viewpoint-discriminatory animus that UO and its retained counsel harbor toward Bruce Gilley and the non-profit representing him on a pro bono basis. Rather than apologizing for UO's illegal behavior, Defendant is doubling down on silencing "conservatives" and "right wingers." This only shows the hollowness of UO's legal counsel's letter purporting to respect Bruce Gilley's rights. UO and its legal representatives appear to despise Bruce Gilley and anyone associated with him.

### 6. Plaintiff has good cause to obtain early targeted discovery

Given that Ms. Stabin has reportedly retired (this is unconfirmed and may be incorrect), Gilley has established good cause to learn who is presently performing her duties, even on an interim basis. In addition, it would be helpful to know early on whether others were involved in Stabin's illegal blocking decisions. *See* ECF No. 11-2 (listing proposed topics).

Admittedly, there is little time left before September 1 to complete a short deposition, but defense counsel has apparently agreed that Gilley may amend his complaint later, so Gilley would request that this Court allow early discovery sometime in September and, if feasible, before the MPI hearing.

### 7. Gilley is suffering ongoing harm and his motion for preliminary injunction remains timely and relevant

As is set forth in his memorandum in support of his motion for preliminary injunction, Bruce Gilley has an extremely strong case that UO's official censored him, in a designated public forum, for viewpoint discriminatory reasons. ECF No. 2;

REPLY RE MTN. TO EXPEDITE - 7

*see, e.g., Garnier v. O'Connor-Ratcliff,* Nos. 21-55118, 21-55157, 2022 U.S. App. LEXIS 20719, at *62 (9th Cir. July 27, 2022); *Lewis v. Jones,* 440 F. Supp. 3d 1123, 1134 (E.D. Cal. 2020). Moreover, given the pattern of discriminatory blocking and UO's admitted custom of granting its officials unfettered discretion to block, this is an issue that cannot be simply waived away without court intervention.

Nor is it sufficient for UO to unblock Gilley and send a hasty letter that the Division "does not intend to block him or anyone in the future based on their exercise of protected speech." ECF No. 19-2 at 1. First, Gilley is not required to take UO at its word, especially because UO is free to change its mind once the threat of this litigation has passed. *See, e.g., Fikre v. FBI,* 904 F.3d 1033, 1037-40 (9th Cir. 2018) (government must demonstrate that the change is entrenched or permanent). Second, UO did not really commit to keeping Gilley and other dissenters unblocked. Mr. Reed limits his purported advice to "protected speech" but does not define what that means. ECF No. 19-2 at 1. Third, he suggests indirectly that UO officials might close designated public forums in order to avoid unwanted comments. *Id.* And Mr. Reed's advice could, of course, change tomorrow (or more likely after this litigation no longer looms) or with a future change of personnel.

It is also telling that UO's letter does not apologize for violating Gilley's right to speak or acknowledge Ms. Stabin's wrongdoing. The claim to have mailed $20 is also more of an insult, than any real recompense. Nominal damages are meant to symbolize compensation for constitutional harms that are not easily quantifiable or which a plaintiff has chosen not to quantify in economic terms. *Uzuegbunam v.*

REPLY RE MTN. TO EXPEDITE - 8

*Preczewski*, 141 S. Ct. 792, 802 (2021). Kevin Reed's $20 is meaningless without an entry of judgment in Bruce Gilley's favor.

A preliminary injunction is also necessary because Bruce Gilley is suffering the ongoing harm of self-censorship. ECF No. 5 at 13 (¶ 65); *see, e.g., Wolfson v. Brammer,* 616 F.3d 1045, 1059-60 (9th Cir. 2010) (self-censorship is a constitutionally recognized injury); *Canatella v. California*, 304 F.3d 843, 855 (9th Cir. 2002) (recognizing ongoing harm to expressive rights of California attorneys who refrain from what they believe to be constitutionally protected activity). Given UO's pattern and practice of censoring Gilley and other dissenters, and its lack of any guardrails on officials' blocking decisions, it is understandable that Gilley would refrain from speaking until his rights can be adjudicated in court. Critics of UO's policies or posted content should not have to run to court every time an official blocks them; and this case presents an opportunity to protect speech rights on a more enduring basis.

If UO is serious about respecting dissent, then it should agree to entry of a consent decree or a stipulated injunction. Likewise, if this Court were to grant a preliminary injunction, it would protect Gilley's rights to speak while the parties discuss long-term protection for speech rights. Plaintiff's counsel has signaled openness to such discussions. ECF No. 19-3 at 3, 5. UO and its counsel have responded by calling IFS a "conservative political organization" and labeling it "right wing."

REPLY RE MTN. TO EXPEDITE - 9

In a free society, inclusion must also include the critics of the prevailing ideological narrative; in this case: DEI. Indeed, some would argue that the intellectual health of the academy depends on it.[2] Vindicating the values of free expression is not merely a political exercise, as UO's officials would have us believe. It is an assertion of civil rights in the face of illiberal institutional hostility toward those same rights.

The cases cited by Defendant in response (ECF No. 18 at 11-12) do not really stand for the proposition that UO's mootness motion should take precedence over protecting Gilley's right to speak, particularly where Defendant has tactically delayed the case's progress, but Gilley would have no objection to consolidating the briefing schedule and hearing to combine both issues.

---

[2] "It is the pitting of opinions against each other, the insistence that anyone can err and that everyone must be checked, which gives liberal science two of its most attractive traits. First, liberal science makes a lot of mistakes. Second, however, it corrects its mistakes by rewarding those who find them." Jonathan Rauch, Kindly Inquisitors 68 (Univ. of Chicago Press, exp. ed. 2013).

REPLY RE MTN. TO EXPEDITE - 10

| | |
|---|---|
| Respectfully submitted, | Dated: August 28, 2022 |
| _s/Endel Kolde_ | _s/D. Angus Lee_ |
| Endel Kolde | D. Angus Lee |
| (pro hac vice) | OSB No. 213139 |
| INSTITUTE FOR FREE SPEECH | ANGUS LEE LAW FIRM, PLLC |
| 1150 Connecticut Ave., NW | 9105 NE Highway 99 |
| Suite 801 | Suite 200 |
| Washington, D.C. 20036 | Vancouver, WA 98665-8974 |
| (202) 301-1664 | (360) 635-6464 |
| dkolde@ifs.org | angus@angusleelaw.com |

*Attorneys for Bruce Gilley*

REPLY RE MTN. TO EXPEDITE - 11