**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Misha Isaak**, OSB No. 086430
MIsaak@perkinscoie.com
**Jeremy A. Carp**, OSB No. 173164
JCarp@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile:  +1.503.727.2222

*Attorneys for Defendants tova stabin
and the Communications Manager*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **BRUCE GILLEY**,<br><br>               Plaintiff,<br><br>   v.<br><br>**TOVA STABIN**, in her individual capacity; and the **COMMUNICATION MANAGER** of the University of Oregon's Division of Equity and Inclusion, in his or her official capacity,<br><br>               Defendants. | Case No. 3:22-cv-01181-HZ<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

158249320.5

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## I. INTRODUCTION

The purpose of a preliminary injunction is to protect vulnerable plaintiffs from the actual or imminent risk of irreparable harm while litigation is ongoing. Plaintiff in this case presents no evidence that he faces any actual or imminent risk of harm. Specifically, he is not being blocked on Twitter, Defendants have confirmed that he will not be blocked again based on his viewpoint, and the individual defendant who originally blocked Plaintiff no longer works at the University of Oregon. Defendants have also provided Plaintiff with a copy of their social media guidelines, which expressly prohibit blocking based on viewpoint. Most revealing, perhaps, is that Plaintiff seeks to enjoin provisions of Defendants' guidelines that have never even been applied to him. Plaintiff may speculate that Defendants will block him again or subjectively fear the same, but this type of subjective fear and speculation cannot support the "extraordinary" and "drastic" remedy Plaintiff seeks. But even if Plaintiff could prove that he is at imminent risk of being blocked again, his claims for permanent injunctive relief are unlikely to succeed on the merits because, for similar reasons, they are moot. A plaintiff cannot prevail on claims over which a court lacks jurisdiction. And in the absence of any ongoing injury and facing serious jurisdictional questions, Plaintiff's requested intrusion into the day-to-day operations of a public entity like the University of Oregon would impose its own undue hardships on Defendants. Accordingly, because he fails to carry his burden of persuasion, the Court should deny Plaintiff's request for a preliminary injunction.

## II. BACKGROUND[1]

Plaintiff filed this action on August 11, 2022. In his First Amended Complaint (the "FAC"), Plaintiff names toba stabin[2] as a defendant in her individual capacity and the Communications Manager (the "Manager") for the University of Oregon's Division of Equity and Inclusion (the

---

[1] "Park Decl." refers to the Declaration of Douglas Park in Support of Defendant's Response in Opposition to Motion to Expedite Preliminary Injunction Hearing and Early Discovery, ECF No. 19; "Larson Decl." refers to the Declaration of Lesli Larson in Support of Defendant's Rule 12(b)(1) Motion to Dismiss, ECF No. 24; and "Widdop Decl." refers to the Declaration of Chris Widdop in Support of Defendant's Rule 12(b)(1) Motion to Dismiss, ECF No. 25.

[2] Defendant stabin spells her name using all lowercase letters.

1- DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

"Division") in his or her official capacity. (FAC ¶¶ 5–6.) Defendant stabin previously worked as the Manager for the Division at the University of Oregon (the "University"). (*Id.* ¶ 5.)

Plaintiff alleges that, on June 14, 2022, stabin blocked Plaintiff from the Division's Twitter account (@UOEquity) after Plaintiff used his Twitter account (@BruceDGilley) to "re-tweet" and comment on a post by the Division's account. (*Id.* ¶¶ 59–61.) Plaintiff contends that he was blocked by Defendant stabin based on the views that he expressed in his re-tweet and comment on the Division's original post. (*Id.* ¶¶ 66–67.)

Plaintiff asserts a facial and as-applied challenge to Defendants' alleged "pattern and practice of blocking Twitter users" who express viewpoints with which they disagree, as well as facial and as-applied challenges to the University's social media guidelines. (*Id.* ¶¶ 82–118.) With respect to the social media guidelines, Plaintiff specifically challenges the provisions authorizing restrictions on users who post comments that are "hateful, "racist," or "otherwise offensive" or "inappropriate." (*Id.* ¶¶ 102, 105, 117; *see also* Larson Decl. ¶ 5 & Ex. 1.) He further contends that he is "entitled to bring a pre-enforcement challenge" against the social media guidelines "because they could be applied to him and content he posts in the future." (FAC ¶ 112.)

In his First Amended Complaint, Plaintiff seeks three types of relief. First, he prays for nominal damages in the amount of $17.91. (*Id.* at 27.) Second, he prays for an injunction requiring Defendants to unblock his Twitter account and prohibiting the University from blocking other social media users based on their "hateful, "racist," or "otherwise offensive" or "inappropriate" speech. (*Id.* at 26.) Plaintiff also requests that the Court enjoin Defendants from discriminating based on viewpoint and "[a]pplying overly broad content-discriminatory criteria"—such as the unbounded exercise of "professional judgment"—when blocking users from the Division's Twitter account in the future. (*Id.*) Finally, he seeks a declaration that Defendants' decision to block him and apply "professional judgment" and/or the "social media guidelines" when making blocking decisions violates the First Amendment. (*Id.* at 27.)

Plaintiff did not confer with Defendants before filing his lawsuit, so the first time the

2- DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

University's counsel had a chance to review Plaintiff's claims and blocking allegations was after press inquiries and reports the day after the Complaint was filed. (Park Decl. ¶¶ 3–4.) That same day, the University unblocked Plaintiff. (*Id.* ¶ 4.) Within days, and before the University was even served a copy of the Complaint, the University's General Counsel, Kevin S. Reed, sent a letter to Plaintiff's counsel stating that (1) Plaintiff had been unblocked, (2) neither Plaintiff nor anyone else would be blocked based on viewpoint in the future, and (3) the University had reminded employees of its prohibition against viewpoint discrimination:

> Prof. Gilley (@BruceDGilley) was unblocked from the Twitter account at issue (@UOEquity) last Friday, August 12, 2022, and the Division of Equity and Inclusion does not intend to block him or anyone else in the future based on their exercise of protected speech. My office has reinforced to our colleagues who control the University's multiple social media channels that, if they open such channels to comments, they may not block commentary on the basis of the viewpoints expressed. I have further confirmed that those social media channels controlled by UO's central communications unit have no blocked users.

(*Id.* ¶ 5 & Ex. 2.) Plaintiff's counsel, Del Kolde, responded by characterizing the University's decision to unblock Plaintiff's Twitter account as "temporary" and asserting that the "voluntary cessation" exception to mootness applies in this case. (*Id.* ¶ 6 & Ex. 3.) The University's Deputy General Counsel, Douglas Park, corrected Mr. Kolde and pointed out that the University's unblocking of Plaintiff was not intended to be "temporary." (*Id.* ¶ 6 & Ex. 3.)

As noted in his First Amended Complaint, before filing this action, Plaintiff lodged a public records request with the University. (FAC ¶¶ 68; Widdop Decl. ¶ 3 & Ex. 1.) He requested, among other things, "the policy utilized by [Defendant stabin] to block Twitter users." (FAC ¶ 68; Widdop Decl. ¶ 3 & Ex. 1.) The University's Public Records Office (the "Office") responded to Plaintiff by informing him that the Division has no written policy governing when it may block a Twitter user and that the "staff member [who] administers the [Division's] Twitter account and social media has the autonomy to manage the accounts and uses professional judgment when deciding to block users." (FAC ¶ 68; Widdop Decl. ¶ 4 & Ex. 2.)

3- DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

That response was incorrect. (*See* Widdop Decl. ¶¶ 4, 6 & Ex. 4; Larson Decl. ¶¶ 3–5 & Ex. 1.) As the Office subsequently advised Plaintiff, the University *does* maintain written guidelines that govern when social media users may be blocked from University-affiliated accounts. (Widdop Decl. ¶¶ 4, 6 & Ex. 4; Larson Decl. ¶¶ 3–5 & Ex. 1.) Thus, in a letter sent shortly after Plaintiff initiated this lawsuit, the Office revised its prior response and specifically informed Plaintiff that the University's divisions are subject to written social media guidelines promulgated by the University. (Widdop Decl. ¶ 6 & Ex. 4.) It provided a link to the guidelines and clarified that the Office's prior response was "inaccurate." (*Id.* ¶ 6 & Ex. 4)

Under the University's social media guidelines, employees are prohibited from "delet[ing] comments or block[ing] users because they are critical or because [employees] disagree with the sentiment or viewpoint." (Larson Decl. ¶ 4 & Ex. 1.) In addition, the guidelines provide that, "[a]s a public university that values freedom of speech and a robust exchange of ideas, [employees] should err on the side of letting people have their say when commenting on our social media properties." (*Id.* ¶ 4 & Ex. 1.) An employee may hide material created by a user or restrict access for a user *only* if the user engages in the following defined conduct:

- Post violent, obscene, profane, hateful or racist comments or otherwise uses offensive or inappropriate language
- Threaten or defame
- Post comments that are out of context, off topic or not relevant to the topic at hand
- Disclose personally identifiable information, such as addresses or phone numbers
- Include copyrighted materials
- Fall under the category of spam
- Suggest or encourage illegal activity
- Solicit, advertise or endorse a third-party business or service
- Are multiple successive posts by a single user
- Are disruptively repetitive posts copied and pasted by multiple users

(*Id.* ¶ 5 & Ex. 1.) It is these limited and defined circumstances that control when Defendants may restrict Twitters users—not an employee's "professional judgment." (*See id.* ¶ 5 & Ex. 1.)

4-   DEFENDANTS' RESPONSE TO PLAINTIFF'S
     MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

158249320.5

### III. STANDARDS

"A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). The purpose of a preliminary injunction is to protect the moving party from a likely "irreparable loss of rights" until the court may render its final decision on the merits. *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quotation omitted). "Preliminary relief," as such, "is properly sought only to avert irreparable harm to the moving party." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006).

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted). "[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). To that end, a plaintiff may receive a preliminary injunction *only* if she "meets all four of the elements of the preliminary injunction test established in *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008): [1] that an injunction would be in the public interest, [2] that without an injunction irreparable harm is likely, [3] that the balance of equities tips in its favor, and [4] that it is likely to succeed on the merits." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011). A plaintiff must satisfy all four elements—the test does not "collapse into the merits of [a] First Amendment claim." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011). Moreover, "mandatory preliminary relief"—that is, relief that changes the status quo as it existed before the conflict giving rise to the case—"is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

### IV. ARGUMENT

Plaintiff cannot satisfy his burden for obtaining a preliminary injunction. First, he fails to show that he is at "imminent" risk of being blocked again. Defendants are no longer blocking

5- DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Plaintiff and have confirmed that they will not block him again for expressing his viewpoint. More than that, Defendant stabin—the individual defendant who blocked Plaintiff—no longer works at the University, and the University has reinforced to staff that its social media guidelines prohibit blocking based on viewpoint. Second, Plaintiff fails to show that he is likely to prevail on the merits of his claims for prospective relief. A plaintiff cannot prevail on claims over which a court lacks jurisdiction. Plaintiff's claims for injunctive relief are moot because there is not a "reasonable probability" Defendants will block him again: Plaintiff is not blocked, he has never been blocked pursuant to the guidelines provisions he seeks to enjoin, and Defendants have made a good-faith promise not to block him again based on his viewpoint. Finally, Plaintiff fails to show that the balance of equities and public interest weigh in his favor because he is not suffering any ongoing injury and public entities like the University have a strong interest in managing their own internal affairs. The Court should therefore deny Plaintiff's motion for a preliminary injunction.

### A. Plaintiff is not likely to suffer irreparable harm because he does not face an "imminent" threat of being blocked for expressing his viewpoint.

Plaintiff cannot show that he is likely to suffer irreparable harm absent a preliminary injunction because he is not being blocked from the University's social media accounts and is not at "imminent" risk of being blocked again for expressing his viewpoint. Irreparable injury is an "indispensable" requirement for a preliminary injunction. *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019). "Even the strongest showing" on the other required elements for injunctive relief cannot justify granting such relief if there is no "imminent and irreparable injury." *Id.* In *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011), for instance, the Ninth Circuit refused to even consider the likelihood of success on the merits once it had determined that the plaintiff was not likely to suffer irreparable harm. 653 F.3d at 982 n.3. And, in *Klein v. City of San Clemente,* 584 F.3d 1196 (9th Cir. 2009), the Ninth Circuit held that, even though the plaintiff was likely to succeed on the merits of a First Amendment claim, he could only obtain preliminary injunctive relief if he also "demonstrate[d] that he [was] likely to suffer irreparable injury in the

6- DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

158249320.5

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

absence of a preliminary injunction." 584 F.3d at 1207.

Critically, a plaintiff "must establish that irreparable harm is *likely*, not just *possible*, in order to obtain a preliminary injunction." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) (emphasis added). "The equitable remedy is unavailable absent a showing of . . . real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). This means that an alleged future harm cannot be "speculative," *id.*, and instead must be "imminent," *Vilsack*, 636 F.3d at 1173. That is, the alleged injury "must be both certain and immediate," not "theoretical."³ *Memphis A. Philip Roth Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (quotation omitted). As the Supreme Court has warned, "a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 375–76. When an injury can be adequately compensated by a later-issued damages remedy—such as a monetary injury arising from past misconduct—it does not warrant the issuance of a preliminary injunction. *See Lyons*, 461 U.S. at 111.

A plaintiff cannot show "imminent" harm based solely on "occasional" past instances of alleged misconduct by government employees. In *Lyons*, for example, the Supreme Court held that the plaintiff's past exposure to a single unconstitutional chokehold could not support an injunction against the use of future chokeholds because the isolated past incident involving the plaintiff failed to show that he faced an "immediate threat" of being choked again.⁴ 461 U.S. at 111. This was

---

³ Although the standard for Article III jurisdiction over claims for prospective relief is similar to the standard for showing irreparable harm in the context of obtaining a preliminary injunction, the irreparable harm standard presents a higher bar than that for federal jurisdiction. As the Ninth Circuit has explained, "a determination that a plaintiff has suffered sufficient injury to support standing" does not "logically require[] the court to conclude that the plaintiff necessarily has demonstrated a sufficient fear of immediate and substantial injury to warrant an injunction." *Midgett v. TriMet*, 254 F.3d 846, 851 (9th Cir. 2001); *see also Hodgers–Durgin v. De La Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (recognizing that evidence sufficient to support conclusion that a plaintiff faced a likelihood of future harm does not necessarily establish that he faces an immediate threat of substantial and irreparable harm).

⁴ *Lyons* is best known for its holding and discussion on the justiciability doctrines, but the Supreme

7- DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

true even though sixteen other people had died within the past eight years from similar chokeholds performed by the same police department. *Id.* at 105; *see also id.* at 115–16 (Marshall, J., dissenting) (stating statistic). Similarly, in *Midgett v. TriMet*, 254 F.3d 846 (9th Cir. 2001), the Ninth Circuit affirmed the denial of a permanent injunction that would have required a local transit agency to comply with the ADA based on several past violations by agency employees. 254 F.3d at 850. It was not enough, the court reasoned, that the plaintiff had been subject to at least four alleged violations over the past year. *Id.* at 848, 850. These "isolated" and "occasional" violations, it explained, could not "support an inference that [the plaintiff] face[d] a real and immediate threat of *continued*, *future* violations of the ADA in the absence of injunctive relief." *Id.* at 850.

A plaintiff likewise cannot show "imminent" harm when the government represents that it does not intend to enforce the contested portion of a policy or regulation. In *Swisher International, Inc. v. FDA*, No. 21-13088, 2022 WL 320889 (11th Cir. Feb. 3, 2022), for instance, the plaintiff challenged an FDA regulation requiring pre-market review of products it was selling without the required agency approval. 2022 WL 320889 at *1. According to the Eleventh Circuit, the plaintiff could not "clearly establish" an "actual or imminent" risk of an FDA enforcement action against it because the FDA had sent the plaintiff a letter stating that it had "no intention of initiating an enforcement action" based on the contested provision. *Id.* at *5. This representation, the court explained, was adequate to show that future enforcement of the regulation was neither "likely" nor "actual or imminent," and the plaintiff failed to present any evidence calling this promise into doubt. *Id.* at *4–5. Although the court acknowledged that there "remain[ed] at least a possibility" that the agency would enforce the contested provision against the plaintiff, it emphasized that "a possibility of irreparable harm" is simply not enough. *Id.* (quoting *Winter*, 555 U.S. at 21–22).

---

Court also considered, in the alternative, whether the plaintiff would have qualified for injunctive relief if the Court did have jurisdiction over his claim for a permanent injunction. It is from this portion of the *Lyons* opinion that the above-quoted language and reasoning come from. The Court ultimately concluded that the plaintiff would not be entitled to injunctive relief for many of the same reasons that it concluded his claims for injunctive relief were not justiciable.

8- DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

158249320.5

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Moreover, any delay in seeking a preliminary injunction is compelling evidence that the plaintiff does not face an imminent threat of irreparable harm. Thus, in *Funds for Animals v. Frizzell*, 530 F.2d 982 (D.C. Cir. 1975), the District of Columbia Circuit held that a 44-day delay in bringing an action for injunctive relief was "inexcusable" and "bolstered" the "conclusion that an injunction should not issue." 530 F.2d at 987. Likewise, in *Mylan Pharmaceuticals v. Shalala*, 81 F. Supp. 2d 30 (D.D.C. 2000), the district court found that a 2-month delay in bringing an action for injunctive relief "militate[d] against a finding of irreparable harm." 81 F. Supp. 2d at 44. And, in *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121 (7th Cir. 1983), the Seventh Circuit held that a 2-month delay in seeking injunctive relief was "inconsistent with a claim of irreparable injury." 721 F.3d at 1123; *see also Citibank, N.A., v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least reduced need for such drastic, speedy action.").

Here, Plaintiff cannot show that there is a "real and immediate" likelihood that Defendants will block him again. Not only are Defendants not currently blocking Plaintiff, but Defendants also unblocked him within hours of learning about his allegations and then confirmed that they would not block him again for expressing his point of view. (Park Decl. ¶¶ 4–5 & Ex. 2.) This all occurred before Defendants had even been served with a copy of the Complaint. Defendants also maintain written social media guidelines that expressly prohibit viewpoint discrimination, and the University has reinforced this prohibition to staff. (*Id.* ¶ 5 & Ex. 2; Larson Decl. ¶¶ 3–5 & Ex. 1.) More than that, Defendant stabin, who blocked Plaintiff in the first instance, retired and no longer works at the University. (Park Decl. ¶ 8 & Ex. 3.) As *Lyons* and *Midgett* make clear, the fact that Plaintiff was previously blocked by stabin on a single, isolated occasion cannot support the inference that he faces a "real and immediate threat" of being blocked again. Although Plaintiff may argue that portions of the guidelines *might* be applied in a discriminatory manner, such a speculative "possibility" is both insufficient for obtaining injunctive relief, *Winter*, 555 U.S. at

| | |
|---|---|
| 9- DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION | Perkins Coie LLP<br>1120 N.W. Couch Street, Tenth Floor<br>Portland, Oregon 97209-4128<br>Phone: +1.503.727.2000<br>Fax: +1.503.727.2222 |

375, and irrelevant in this case because the University has represented that it has no "intent" of doing so, *Swisher*, 2022 WL 320889, at *3. (*Id.* ¶¶ 4–6 & Ex. 2–3.) And, insofar as Plaintiff now claims that being blocked will cause irreparable harm, that argument—as in *Mylan*, *Shaffer*, and *Funds for Animals*—is belied by the 58 days he waited before seeking injunctive relief.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff cites *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014), for the proposition that even "[a] colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." (Mot. for Prelim. Inj. at 23 (quoting *Doe*, 772 F.3d at 583).) But Plaintiff's cherry-picked presentation of the quote is misleading. As the *Doe* court emphasized just two sentences earlier: "Even where a plaintiff has demonstrated a likelihood of success on the merits of a First Amendment claim, he must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor. We do not simply assume that these elements collapse into the merits of the First Amendment claim." *Doe*, 772 F.3d at 582–83 (quotations omitted). Indeed, as the Supreme Court made clear in *Winter*, the purpose of a preliminary injunction is not to remedy past harms or "possible" future harms—First Amendment or otherwise—but rather to avoid future harms that are "likely" in the absence of an injunction.[5] 555 U.S. at 21–22. Consequently, the only time irreparable harm may be presumed in a First Amendment case is when

---

[5] In fact, the language quoted by Plaintiff was almost surely abrogated by *Winter*. Specifically, the Ninth Circuit case which originated that language, *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir.2002), relied on the logic that a "colorable" First Amendment claim created the "*potential* for irreparable injury" and thus weighed in favor of an injunction. 303 F.3d at 973 (emphasis added). But it was precisely this "potential" injury standard, as employed by the Ninth Circuit, that the Supreme Court rejected in *Winter*, instead requiring that irreparable harm be "likely." 555 U.S. at 21–22; *see also Lyons*, 461 U.S. at 111 ("The equitable remedy is unavailable absent a showing of . . . real or immediate threat that the plaintiff will be wronged again."). Indeed, *Winter* rejected the Ninth Circuit's use of a "potential" injury standard even when it was coupled with a "*strong* likelihood of prevailing on the merits." 555 U.S. at 21 (emphasis added). It stands to reason that the Supreme Court would find a "colorable" chance of prevailing on the merits insufficient to justify lowering the probability of irreparable harm to a mere "possibility." Thus, regardless of the language quoted by Plaintiff from *Doe*, a "colorable" First Amendment claim does not support the presumption that he is "likely" to suffer irreparable harm absent an injunction.

10- DEFENDANTS' RESPONSE TO PLAINTIFF'S
    MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

a First Amendment injury is *ongoing* or *likely* to occur in the future. *Cf. DISH Network Corp.*, 653 F.3d at 776 (holding that a presumption of irreparable harm does not follow from a finding that the plaintiff is likely to prevail on the merits of a First Amendment claim).

Second, Plaintiff contends that, even if he is no longer being blocked by Defendants, the "existence of unbridled blocking discretion" and "an established track record of viewpoint-discriminatory blocking" will cause him to "self-censor in future comments." (Mot. for Prelim. Inj. at 24.) But neither premise underlying his alleged self-censorship rationale is supported by the record. As described above, the University does not provide its employees with "unbridled" discretion to block users; rather, it maintains social media guidelines which *prohibit* viewpoint discrimination and authorize staff to restrict users only in limited and defined circumstances. (Larson Decl. ¶¶ 3–5 & Ex. 1; Widdop Decl. ¶ 6 & Ex. 4.) Similarly, Defendants do not have a "track record" of blocking Twitter users based on viewpoint; instead, the record shows an isolated instance of one employee departing from the University's established practice to block Plaintiff on a single occasion. (Park Decl. ¶¶ 4–6 & Ex. 2.) Plaintiff insinuates that Defendants have blocked two other users for expressing their viewpoints, but he offers no evidence that these users were blocked for impermissible reasons. In any event, even "occasional" instances of past misconduct are insufficient to show an "immediate" risk of future harm. *Midgett*, 254 F.3d at 850.

Plaintiff cannot avoid this fact by manufacturing an injury where none exists—and none is likely to occur—simply by alleging a change in his behavior based on a subjective, speculative, and unreasonable fear of future harm. Plaintiff is free to comment on the Division's social media activity, and he faces no "imminent" risk of being blocked again for expressing his viewpoint. *See supra* pp. 8–11. It would defeat the purpose of the irreparable harm requirement if Plaintiff could inflict upon himself the very injury he claims to fear (i.e., censorship) when there is otherwise no evidence that Defendants are "likely" to "censor" Plaintiff again in the future.[6] As the Ninth Circuit

---

[6] Plaintiff also provides no evidence that he is, in fact, self-censoring in response to his subjective and speculative fear of being blocked again. Indeed, this case is nothing like cases where plaintiffs' exercise of their First Amendment rights may reasonably be chilled because they fear being

11- DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

has made clear, "self-inflicted wounds are not irreparable injury," and they are incompatible with a "claim for equitable relief." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (quotation omitted); *see also Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) ("Self-inflicted wounds are not irreparable injury. Only the injury inflicted by one's adversary counts for this purpose."); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1993) ("Because the defendants have acted to permit the outcome which they find unacceptable, we must conclude that such an outcome is not an irreparable injury."). Accordingly, because Plaintiff cannot show a "real and immediate" likelihood that Defendants will block him again, the Court should deny his request for preliminary injunctive relief.

**B.    Plaintiff is not likely to succeed on the merits of his claims for injunctive relief because those claims are moot and beyond the Court's jurisdiction.**

Plaintiff is also unlikely to succeed on the merits of his claims for prospective relief because these claims fall outside of the Court's jurisdiction.

To begin, one must distinguish between Plaintiff's damages claim, on the one hand, and his claims for prospective relief, on the other. When presented with a motion for a preliminary injunction, courts test the likelihood that the movant will succeed on the merits only of their claim for prospective relief. That is because a claim for past misconduct virtually always has an adequate remedy at law (*i.e.*, damages) and is not germane to the merits of injunctive relief for an alleged *future* injury. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). Here, Plaintiff's damages claim—which is based on an isolated instance of *past* misconduct—cannot support a showing that Plaintiff is likely to succeed on merits of his claims for *prospective* relief. Stated differently, it is irrelevant to the instant motion whether or not Plaintiff is likely to succeed on the merits of his damages claim; it only matters whether he is likely to prevail on his claims for permanent injunctive relief.

---

prosecuted, retaliated against, or fired from employment.

12-   DEFENDANTS' RESPONSE TO PLAINTIFF'S
         MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax:   +1.503.727.2222

Indeed, that is precisely how the Supreme Court treated the plaintiff's damages claim in *Lyons*, holding that the strength of any retrospective claim based on "the violence to which . . . [the plaintiff] was once subjected" presented a conceptually distinct issue from the viability of his claim for prospective relief. 461 U.S. at 111. Similarly, insofar as Plaintiff seeks to enjoin *the University* or its agents rather than Defendant stabin—who is retired and no longer controls the @UOEquity account—he has not alleged (nor could he allege) a claim for damages against the University. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (holding that neither the Eleventh Amendment nor Section 1983 allows a plaintiff to bring a claim for damages against a state or a state official sued in her official capacity). Thus, whatever the propriety of Defendants' original act of blocking Plaintiff, it does not inform the separate question of whether Plaintiff is likely to prevail on his forward-looking claim for injunctive relief.

Plaintiff, in turn, is unlikely to succeed on the merits of his claims for permanent injunctive relief because those claims are now moot. (*See* Def.'s Mot. to Dismiss at 5–15.) Specifically, there is no "reasonable probability" that Defendants will block Plaintiff again based on his viewpoint. Defendants have "unequivocally renounced" blocking Twitter users based on their viewpoints, and they have confirmed for Plaintiff that they will not block him again based on his viewpoint. *Brach v. Newsom*, 38 F.4th 6, 13 (9th Cir. 2022) (en banc). That confirmation carries special weight because, as state actors, Defendants are entitled to a "presumption of good faith." *Rosebrock v. Mathis*, 745 F.3d 963, 973 (9th Cir. 2014). Plaintiff, likewise, is no more likely than any other member of the public to be blocked pursuant to the specific provisions of the social media guidelines he now seeks to enjoin because those provisions were never relied upon to block him in the first instance. (Park Decl. ¶ 5 & Ex. 2.) That is, any abstract question about the legality of those provisions cannot save the case from becoming moot because Plaintiff has never been injured by them and is not at imminent risk of being injured by them in the future. "[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution . . . and seeking relief that no more

13-  DEFENDANTS' RESPONSE TO PLAINTIFF'S
     MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–54 (1992).

Still, even if the Court were to assume that it has jurisdiction—as the Supreme Court did in *Lyons*—Plaintiff is not likely to succeed on his claim for permanent injunctive relief for the same reasons: he does not, as described above, face an "imminent" threat of being blocked again. *Lyons*, 461 U.S. at 111. In other words, even if Plaintiff were to obtain a judgment at the end of this case declaring that Defendants both violated his rights and maintain an unconstitutional social media policy, he would be equally unlikely to obtain a permanent injunction because he would still be unable to show "any real or immediate threat that [he would] be wronged again." *Id.*

Similarly, even if the Court were to consider the likelihood of Plaintiff succeeding on his retrospective damages claim against Defendant stabin—which, for the reasons already discussed, it should not do—Plaintiff is not likely to succeed on that claim either because it, too, is now moot. Plaintiff's damages prayer is for $17.91. (FAC at 27.) Defendants paid that prayer in full when they first communicated with Plaintiff's counsel just days after this lawsuit was filed. (Park Decl. ¶ 5 & Ex. 1.) "[A] claim becomes moot when a plaintiff *actually receives* complete relief on that claim . . . ." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016); *see also Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (holding that a claim for long-term disability benefits was moot because the carrier paid the benefits sought and, thus, the plaintiff "had received everything she requested"); *Silk v. Metro. Life Ins. Co.*, 310 F. App'x 138, 139 (9th Cir. 2009) (same). Because, here, Plaintiff has received all the damages he has asked for, nothing remains of his retrospective damages claim for the Court to adjudicate; it is therefore moot.

Accordingly, because Plaintiff is unlikely to succeed on the merits of his claims for permanent injunctive relief, the Court should deny his request for a preliminary injunction.

**C.     The balance of equities and public interest do not weigh in favor of Plaintiff because there is no ongoing constitutional injury and state entities like the University have a strong interest in managing their internal affairs.**

The balance of equities and public interest also weigh against Plaintiff because he is not

14- DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

suffering any ongoing constitutional injury and state entities like the University have a strong interest in managing their own internal affairs. When a party seeks a preliminary injunction against the government, the balance of the equities and public interest factors "merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Plaintiff contends that he should prevail on both factors because (1) "it is always in the public interest to prevent the violation of a party's constitutional rights," and (2) the "chilling of [his] free speech rights" tips the balance of hardships in his favor. (Mot. for Prelim. Inj. at 24.) Although it is true that enjoining the violation of a fundamental right is "always in the public interest," *Sammartano*, 303 F.3d at 974 (quotation omitted), Defendants are no longer blocking Plaintiff and have promised that they will not block him again, meaning there is no ongoing First Amendment violation for the Court to enjoin. Moreover, as described above, it is pure speculation that the University's social media guidelines will, in the future, be applied to Plaintiff or any other member of the public in a discriminatory manner, and any subjective fear of Plaintiff being blocked again is not objectively reasonable based on the current record. *See, e.g.*, *Sierra Club v. Trump*, 929 F.3d 670, 706 (9th Cir. 2019) (holding that the balance of hardships should not account for a plaintiff's "self-inflicted wounds").

By contrast, an injunction will have a concrete and immediate impact on the University's ability to manage its own internal affairs. Plaintiff seeks a "mandatory" injunction which would require the University to do more than restore the status quo as it existed before he interacted with the Division's Twitter account, namely by making changes to its social media guidelines, including provisions that were never even applied to Plaintiff. This type of "mandatory" relief is "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl*, 7 F.3d at 1403. Moreover, as a public entity, "it is a well-established rule" that the University has a strong interest in managing "its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378–79 (1976) (quotation omitted). And, as a recipient of federal funds, this control over internal affairs includes ensuring that the University complies with Titles VI and IX—which together prohibit the University from fostering a hostile educational environment based on race,

15- DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

158249320.5

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

color, national origin, or sex—as well as its educational mission. As the Ninth Circuit has warned, "a federal court must exercise restraint when a plaintiff seeks to enjoin any non-federal government agency, be it local or state." *Midgett*, 254 F.3d at 851. The fact that the University is a state actor "with procedures already in place" for preventing viewpoint discrimination "militates against a federal court's mandating substitute procedures of its own design to address the same issues." *Id.*

Accordingly, because these factors weigh against Plaintiff or, at the very least, favor neither party, the Court should deny Plaintiff's request for a preliminary injunction.

## V.   CONCLUSION

The issues underlying this case could have been resolved with a simple phone call or email. The fact that Plaintiff instead chose to make a federal case out of an isolated error that could have been easily remedied does not entitle him to a preliminary injunction. Accordingly, for all of the reasons stated above, the Court should deny Plaintiff's motion for a preliminary injunction.

DATED: September 23, 2022.

**PERKINS COIE LLP**

By: */s/ Misha Isaak*
**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Misha Isaak**, OSB No. 086430
MIsaak@perkinscoie.com
**Jeremy A. Carp**, OSB No. 173164
JCarp@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000

*Attorneys for Defendants tova stabin and the Communications Manager*

16- DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

158249320.5

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222