D. Angus Lee, OSB No. 213139
ANGUS LEE LAW FIRM, PLLC
9105 NE Highway 99, Suite 200
Vancouver, WA 98665-8974
(360) 635-6464
angus@angusleelaw.com

Endel Kolde
(pro hac vice)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Suite 801
Washington, D.C. 20036
(202) 301-1664
dkolde@ifs.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| BRUCE GILLEY,<br><br>　　*Plaintiff*,<br><br>　　v.<br><br>TOVA STABIN, in her individual capacity; and the COMMUNICATION MANAGER of the University of Oregon's Division of Equity and Inclusion, in his or her official capacity,<br><br>　　*Defendants*. | Case No. 3:22-cv-01181-HZ<br><br>PLAINTIFF'S PRE-HEARING MEMORANDUM |

PLNT'S PRE-HEARING MEMO. - 1

MEMORANDUM

Bruce Gilley submits this pre-hearing memorandum in light of the expedited discovery conducted since the most recent round of briefing on the cross-motions for preliminary injunction and motion to dismiss. Gilley should prevail on both motions for the following reasons:

1. *UO's story keeps changing*

UO has given many differing and contradictory explanations for its officials' actions. First, UO told Gilley that there were no written criteria for blocking decisions, but after he sued them, UO suddenly claimed to have social media guidelines, which it hastily posted on its website. *Compare* ECF No. 5-12 (original public records response) *with* ECF No. 25-4 ("The statement we provided to Prof. Gilley on July 5 was inaccurate"). Despite asserting that those guidelines had been extant and unchanged, they were in fact first posted in response to this litigation. *Compare* ECF No. 24 at 2 (¶ 6) *with* Ex. O at 170:14-19 (criteria were first posted after this lawsuit was filed). Now UO wishes to rely on its previously secret guidelines to avoid this litigation.

Second, UO argued that Gilley cannot challenge its guidelines because they were not applied to him when Tova Stabin blocked him. ECF No. 31 at 2 ("Most revealing, perhaps, is that Plaintiff seeks to enjoin provisions of Defendants' guidelines that have never been applied to him."). UO took its time telling Gilley why he was blocked. But in her deposition on October 28, 2022, Tova Stabin finally

PLNT'S PRE-HEARING MEMO.  - 2

testified that she knew about the guidelines and said that she had applied them to Gilley. Ex. P at 47:4-10; 51:5-20.

Third, UO has claimed that it would not block Gilley or others based on viewpoint in the future (ECF No. 19-2 at 1; ECF No. 23 at 6-7 ("…informed Plaintiff that the original blocking violated Defendant's existing prohibition against viewpoint discrimination on social media."); ECF No. 31 at 7 ("…and have confirmed that they will not block him *again* for expressing his viewpoint.")) (emphasis added), but its representatives now claim that Gilley was blocked not because of his viewpoint, but because his comment, "all men are created equal," was off-topic. Of note, UO did not settle on this final explanation until October 28. That explanation lacks support.

Fourth, UO has changed its guidelines as recently as last month, while this lawsuit was ongoing, quietly doing away with the provision that allowed communication managers to permanently ban users for "egregious" conduct. *Compare* ECF No. 24-1 at 2 (contains "ban" provision) *with* ECF No. 39-1 at 9 (Oct. 2022 revision that omits "ban" provision). This is not a coincidence.

Fifth, UO claims to have unblocked Gilley upon learning that he was blocked (ECF No. 31 at 10 ("…Defendants unblocked him within hours of learning about his allegations…"); ECF No. 19-2) and even faults Gilley for waiting too long to seek legal relief (ECF No. 31 at 11), but UO was on notice of Gilley's concerns at least as early as June 26, 2022 (ECF No. 5-11) when Gilley submitted his public records request, asking for information about blocked accounts and blocking criteria.

PLNT'S PRE-HEARING MEMO. - 3

Indeed, internal UO emails dated June 27, 2022, show that Assistant VP for Equity and Inclusion Kimberly Pembleton (who is also VP Alex-Assensoh's Chief of Staff) communicated about the request with Tova Stabin, who referred to Gilley as "obnoxious" and characterized him as saying something about the "oppression of white men." Second Kolde Supp. Dec., ¶¶ 8-9; Dep. Exs. 12-13.

In addition, VP Alex-Assensoh was copied on several of the emails about Gilley's records request, including an email from Asst. VP Pembleton where she described Tova Stabin as having autonomy to exercise "professional judgment" when blocking Twitter users. Second Kolde Supp. Dec., ¶ 10; Dep. Ex. 14; *see also* Dep. Exs. 6, 19 (copied to VP Alex-Assensoh). These emails make no reference to UO's guidelines. These emails also show that high-level UO managers were aware of Gilley's being blocked in late June 2022 and yet they took no measures to unblock him until he sued, a month-and-half later.[1]

UO's claims of viewpoint-neutrality and appeals for deference should be evaluated in light of its shifting narrative about its own rules and UO's employees' actions and omissions with respect to Gilley.

---

[1] It should be noted that when Assistant VP Pembleton learned of Gilley's blocking and took no action to investigate further or unblock him she tacitly approved Tova Stabin's blocking decision. *See* Ninth Circuit Model Civil Jury Instruction 9.4, *Section 1983 Claim Against Supervisory Defendant in Individual Capacity—Elements and Burden of Proof.*

PLNT'S PRE-HEARING MEMO. - 4

   2. *UO's guidelines are malleable and do not rise to the level of policy or legislation*

UO has asserted that its guidelines provide lasting protection to Gilley and other DEI critics, but the guidelines are too easily changed, making the voluntary cessation doctrine applicable here and vitiating UO's claim of mootness. *See Fikre v. FBI,* 904 F.3d 1033, 1039 (9th Cir. 2018); *Rosebrock v. Mathis,* 745 F.3d 963, 972 (9th Cir. 2014).

It is undisputed that the social media guidelines do not rise to the level of official UO policy. Ex. O at 102:17-23; 104:25-105:11; 106:12-18 (not approved like a policy); 107:3-13 ("…it evolves, and especially in a situation related to social media which is ever changing"); *see also* Dep. Ex. 16 at 2 ("What is a University 'policy'); *see also* UO University Policy Library, *University Policies,* https://policies.uoregon.edu/vol-1-governance/ch-3-policies/university-policies (last visited Nov. 9, 2022) ("Excluded from this definition are things such as…implementation guides, operating *guidelines,* internal procedures, and similar management controls and tools") (emphasis added).

The guidelines' malleability is demonstrated by UO quietly moving to drop the "ban" language from its guidelines will this litigation was ongoing, likely to assist it in its defense. *Compare* ECF No. 24-1 at 2 *with* ECF No. 39-1 at 9. The timing of this change makes it suspect, much like the University of Michigan's litigation-influenced policy change in *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769 (6th Cir. 2019) ("The timing of the University's change also raises suspicions that its

PLNT'S PRE-HEARING MEMO. - 5

cessation is not genuine. The University removed the definitions after the complaint was filed").

If UO can so easily drop language from its guidelines that proves ill-conceived during litigation, then it can easily add back a similar guideline after the Court's scrutiny is no longer upon it. Under these circumstances, Gilley and other DEI critics lack durable procedural protections for their speech rights.

### 3. UO haphazard application of its own guidelines created a designated public forum

UO's changing story about blocking criteria leads to the inevitable conclusion that the interactive portions of @UOEquity are a designated public forum where all content-based restrictions are subject to strict scrutiny, rather than a limited public forum were reasonable content-based restrictions are allowed, so long as they are viewpoint neutral. *See Garnier v. O'Connor-Ratcliff,* No. 21-55118 21-55157, 2022 U.S. App. LEXIS 20719, at *60 (9th Cir. July 27, 2022) (trustees could have established and enforced clear rules of etiquette for public comments); *Hopper v. City of Pasco,* 241 F.3d 1067, 1076 (9th Cir. 2001) ("A policy purporting to keep a forum closed (or open to expression only on certain subjects) is no policy at all for purposes of public forum analysis if, in practice, it is not enforced or if exceptions are haphazardly permitted"); *compare Seattle Mideast Awareness Campaign v. King County,* 781 F.3d 489, 497-98 (9th Cir. 2015) (county transit advertising program consistently applied detailed screening criteria making it a limited public forum). UO's guidelines do not pass strict scrutiny either facially or as-applied.

PLNT'S PRE-HEARING MEMO.  - 6

The record to-date shows that the Division first claimed there were no written blocking criteria at all, but now UO is claiming that Tova Stabin did apply its guidelines. UO's internal emails do show occasional, ad hoc blocking of user posts, but UO has not met its burden to show that it consistently and systematically screens user comments for compliance with its guidelines.

Indeed, in the case of @UOEquity, the communication manager had only ever blocked three users, all of whom happened to express conservative viewpoints critical of DEI. *See* Dep. Exs. 12, 14; ECF No. 5-13. In the absence of persuasive evidence that UO consistently polices user content in the interactive portions of its Twitter accounts, the default rule is that UO created a designated public forum, where strict scrutiny applies to any content-based restrictions (not just viewpoint-based restrictions).

4. *UO's claim of viewpoint neutrality is contradicted by its social media guidelines and Tova Stabin's emails*

Defendants claim that they will not block anyone based on viewpoint is contradicted by the fact that UO continues to maintain social media guidelines that authorize its communication managers to block users based on their viewpoints. *See* ECF No. 24 at 2 ("Under the University's social media guidelines, an employee may hide material created by a user or restrict access..."); ECF No. 24-1 ("But you may remove comments, messages, and other communications and restrict access to users who violate the following guidelines…").

PLNT'S PRE-HEARING MEMO.  - 7

UO's guidelines enshrine viewpoint discrimination because they allow blocking or banning of users who the communication manager deems, subjectively, to have posted content that is offensive, racist, hateful, or otherwise inappropriate. *See, e.g., Am. Freedom Def. Initiative v. King County,* 904 F.3d 1126, 1132 (9th Cir. 2018); ECF No. 32 at 24-27 (collecting cases on offensive viewpoints). That UO has maintained viewpoint discrimination in the guidelines, in the face of litigation, is telling of UO's future intent.

Moreover, the risk of viewpoint discriminatory blocking under UO's guidelines is heightened when they are put into the hands of a DEI-ideology adherent, because such ideologues apply an "anti-racist," DEI lens to those terms. *See* ECF No. 33 at 3-5; Ex. Q at 62:3-8, 63:19-21, 65:7-4 (UO students, staff, and faculty have right to "psychological safety"); 70:14-72:1 (oppression is part of the "higher education landscape…embedded in culture and society of America and international forces."); 73:19-74:12 (criticizing colorblindness); 76:7-15 (calling for "stridently and consistently" choosing anti-oppressive deeds).

Defendants' claims that Tova Stabin blocked Bruce Gilley for being off-topic are simply not credible. First, his comment about equality is self-evidently relevant to the topic of racism, even if not everyone understands every aspect to the quote. Even VP Alex-Assensoh admitted as much. Ex. Q at 52:1-53:1.

Even more glaring is the viewpoint discriminatory language that Stabin used to describe Gilley's retweet in UO's internal emails. She did not indicate that she was confused by his comment; rather she characterized it as "obnoxious" and accused

PLNT'S PRE-HEARING MEMO. - 8

him of "talking something about the oppression of white men[.]" Dep. Exs. 12, 13. Moreover, she claimed he was "there to just trip you up and make trouble." Dep. Ex. 13. These are not words of someone who is making a viewpoint-neutral blocking decision.

   5. *UO's guidelines are vague and allow for excessive enforcement discretion*

UO's guidelines allow for blocking users who are deemed to have posted content that is "violent" "obscene," "racist," "hateful," "offensive" or otherwise "inappropriate." But these are expansive terms that invite communication managers, and social media users to speculate about their meaning in application. When questioned as UO's Rule 30(b)(6) designee, VP of Communications Richie Hunter struggled to provide any detailed explanation of what those terms meant. *See* Ex. O at 108:18-109:1; 110:8-19; 111:7-10; 112:1-25; 113:4-8; 115:4-116:4; 116:22-117:5 (people may apply definition of racist differently); 117:14-22 ("There's a lot of gray here."); 118:10-120:1 ("And these last two terms are probably…the most vague, and there's just a level of vagueness").

Moreover, examining the Webster's definitions of the terms used in UO's guidelines, as Ms. Hunter indicated would be done by UO's personnel, does nothing to provide greater clarity. *See* Ex. R (Webster's definitions). In fact, doing so only invites greater subjectivity.

Vague speech guidelines are a problem of constitutional dimension because they invite self-censorship and inconsistent application by rule enforcers. *G.K. Ltd.*

PLNT'S PRE-HEARING MEMO.  - 9

*Travel v. City of Lake Oswego*, 436 F.3d 1064, 1084 (9th Cir. 2006) (vague regulations fail to give notice and may lead to arbitrary and discriminatory enforcement); *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1150-51 (9th Cir. 2001) (vague statutes "impermissibly delegate basic policy matters to lower level officials for resolution on an ad hoc and subjective basis…"); *Nw. Immigrant Rights Project v. Sessions*, No. C17-716 RAJ, 2017 U.S. Dist. LEXIS 118058, at *17 (W.D. Wash. July 27, 2017) (government's regulations on non-citizen representation were too vague). In addition to being vague, UO's guidelines allow communication managers to exercise excessive discretion.

UO has also not shown any evidence that it has provided training or interpretive guidance on the meaning of the blocking terms in the social media guidelines. That invites subjective and selective enforcement against disfavored speakers. *People for the Ethical Treatment of Animals, Inc. v. Shore Transit*, 580 F. Supp. 3d 183, 195 (D. Md. 2022) (there are no additional guidelines to limit Defendants' discretion in determining what constitutes a transit advertisement that is "political" or "controversial, offensive, objectionable, or in poor taste"); *Marshall v. Amuso*, 571 F. Supp. 3d 412, 424 (E.D. Pa. 2021) ("In parsing out these subjective terms, the School Board has presented no examples of guidance or other interpretive tools to assist in properly applying Policies 903 and 922 to public comments."); *see also Minn. Voters All. v. Mansky,* 138 S. Ct. 1876, 1891 (2018) (cited by both *Marshall* and *People for the Ethical Treatment of Animals* for the proposition that officials'

"discretion must be guided by objective, workable standards"). This makes UO's stated commitment to viewpoint neutrality not credible.

After first declining to tell us why they blocked Gilley, Defendants have belatedly claimed that Gilley's re-tweet with the equality comment was "off topic" with respect to UO's racism interrupter. But declaring something off-topic in this way doesn't make sense. "If the topic of debate is, for example, racism, then exclusion of several views on that problem is just as offensive to the First Amendment as exclusion of only one." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 831 (1995).

Moreover, if the interactive portions of @UOEquity are a designated public forum, then UO may not police content for being off-topic. That is reserved for limited public forums, which must be systematically monitored. *See above, infra.*

Even if this Court were to find that the interactive portions of @UOEquity are a limited public forum, UO may not apply its topicality rules selectively in such a way as to exclude primarily disfavored viewpoints. Selective enforcement of otherwise viewpoint neutral rules is also a form of viewpoint discrimination. *Brooks v. Francis Howell Sch. Dist.*, No. 4:22-cv-00169-SRC, 2022 U.S. Dist. LEXIS 73113, at *17-22 (E.D. Mo. Apr. 21, 2022).

It is telling that the only users who Tova Stabin ever banned were all critics of DEI. Dep. Ex. 14; ECF No. 5-13. Indeed, here the lack of widespread blocking by the communication manager illustrates the targeted nature of her conduct.

PLNT'S PRE-HEARING MEMO.  - 11

To the extent that Defendants claim that Gilley is not challenging the topicality provision of UO's guidelines, Plaintiff wishes to point out that he is challenging any viewpoint discriminatory application of UO's blocking criteria to him or any other critic of DEI, including the topicality provision. ECF No. 2 at 2 (motion seeking to enjoin UO from "discriminating on the basis of viewpoint when blocking users"); ECF No. 29 at 26 (seeking injunction against "[e]nforcing vague and subjective portions of UO's social media guidelines[.]"

Moreover, it is patently unreasonable to claim that a comment about equality is irrelevant to a Tweet about racism. Thus, even if this is a limited public forum, UO's application of its guidelines is not constitutional.

## CONCLUSION

This Court should grant Bruce Gilley's motion for a preliminary injunction and deny UO's motion to dismiss.

Respectfully submitted,                    Dated: November 10, 2022

 *s/Endel Kolde*                            *s/D. Angus Lee*
Endel Kolde                                D. Angus Lee
(pro hac vice)                             OSB No. 213139
INSTITUTE FOR FREE SPEECH                  ANGUS LEE LAW FIRM, PLLC
1150 Connecticut Ave., NW                  9105 NE Highway 99
Suite 801                                  Suite 200
Washington, D.C. 20036                     Vancouver, WA 98665-8974
(202) 301-1664                             (360) 635-6464
dkolde@ifs.org                             angus@angusleelaw.com

*Attorneys for Bruce Gilley*