**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Misha Isaak**, OSB No. 086430
MIsaak@perkinscoie.com
**Jeremy A. Carp**, OSB No. 173164
JCarp@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile: +1.503.727.2222

*Attorneys for Defendants tova stabin
and the Communications Manager*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **BRUCE GILLEY**,<br><br>          Plaintiff,<br><br>     v.<br><br>**TOVA STABIN**, in her individual capacity; and the **COMMUNICATION MANAGER** of University of Oregon Division of Equity and Inclusion, in his or her official capacity,<br><br>          Defendants. | Case No. 3:22-cv-01181-HZ<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF** |

DEFENDANTS' RESPONSE TO
PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

## I. INTRODUCTION

In filing this action before even conferring with Defendants, Plaintiff sought to manipulate this Court's jurisdiction and create the appearance of an ongoing injury requiring an assertive judicial response. But after ample discovery, briefing, and an evidentiary hearing, Plaintiff still cannot show the type of ongoing or imminent harm required to invoke federal jurisdiction and obtain a preliminary injunction. The record reflects the opposite: Plaintiff faces no risk of future harm, and Defendants have fully satisfied his prayer for damages. Accordingly, because Plaintiff faces no ongoing or imminent threat of future injury for which the Court may provide relief, his claims should be dismissed as moot, and his request for a preliminary injunction should be denied.

## II. DISCUSSION

### A. The record does not reflect any probability, let alone a reasonable probability, that Plaintiff will be blocked by the Division of Equity and Inclusion in the future for expressing a viewpoint.

The dispositive issue in this case is whether Plaintiff faces a reasonable probability of being blocked on social media by the University of Oregon's Division of Equity and Inclusion in the future for expressing a viewpoint. The evidence affirmatively and overwhelmingly shows that Plaintiff faces no such risk of being blocked.

#### 1. Plaintiff's alleged risk of future blocking is based on speculation divorced from the record.

There is no evidence that Plaintiff will be blocked in the future. Plaintiff was blocked on a single occasion by an individual employee who no longer works at the University. After learning that he had been blocked, the University immediately unblocked Plaintiff and assured him that he would not be blocked in the future for sharing his point of view. (Park Decl., ECF No. 19, ¶¶ 4–5 & Ex. 2.) The University also reinforced to staff that it prohibits viewpoint discrimination in managing social media channels. (Larson Decl. iso Supp. Br., ECF No. 46, Ex. 4.) The former employee who blocked Plaintiff, tova stabin, testified that she acted alone and without the knowledge, input, or approval of any other University employee. (Carp Decl., ECF No. 48, Ex. 2 (Stabin Dep. Tr. 81:23–82:1).) In fact, Ms. stabin's decision to block Plaintiff was an anomaly: of

1- DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

the more than 2,550 retweets and replies directed at @UOEquity since 2013, only 3 have ever been blocked. (Larson Decl. iso Supp. Br., ECF No. 46, ¶¶ 3–6.) Simply put, not only does the <u>only</u> employee involved in Plaintiff's blocking no longer work at the University, but everything the University has done historically and in the time since learning about Plaintiff's allegations demonstrates that Plaintiff will not be blocked for impermissible reasons in the future.

There is also no evidence that one or more specific employees would target Plaintiff for his viewpoints. The Communications Manager role previously held by Ms. stabin is vacant. (Carp Decl., ECF No. 48, Ex. 1 (Hunter Dep. Tr. 12:17–21, 43:10–16).) That position is responsible for administering the @UOEquity account. It is impossible to determine from the record how an unidentifiable future employee would interpret an unknown future comment posted by Plaintiff <u>and</u> conclude that this unidentifiable employee would violate the University's prohibition on viewpoint discrimination. Moreover, the line of reporting for the future Communications Manager will be different than it was for Ms. stabin. Ms. stabin reported directly to the Communications Department; the future Communications Manager will report directly to the Division of Equity and Inclusion. (Carp Decl., ECF No. 48, Ex. 1 (Hunter Dep. Tr. 12:5–20).) This change will place the future Communications Manager in an entirely different department, making any prediction about their treatment of future comments by Plaintiff even more speculative. In fact, the only evidence in the record is that the new supervisor, Dr. Yvette Alex-Assensoh, has categorically rejected viewpoint discrimination in managing University social media channels. (Carp Decl., ECF No. 48, Ex. 3 (Alex-Assensoh Dep. Tr. 98:5–20).) There is, as such, no evidence from which to infer that Plaintiff faces any probability of being blocked in the future.

    **2.**    **The University's social media guidelines are binding and have been consistently enforced by the University for nearly a decade.**

The University also maintains binding social media guidelines prohibiting viewpoint discrimination. The guidelines have been in force since at least 2019. (Larson Decl. iso Supp. Br., ECF No. 46, Ex. 3.) The relevant portions of the guidelines, which flatly prohibit viewpoint discrimination and require staff to "err on the side of letting people have their say," have remained

2-  DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

substantively unchanged throughout that time. (*Compare id.* (2019 guidelines) *with* Larson Supp. Decl., ECF No. 39, Ex. 1 (current guidelines).) The record also shows that the University has consistently enforced this prohibition—even before it was put into writing in 2019—since the @UOEquity account was created in 2013. (Larson Decl. iso Supp. Br., ECF No. 46, ¶¶ 3–6 (stating that only 3 of the more 2,550 retweets and replies directed at the @UOEquity account have ever been blocked).) This consistent enforcement includes the University promptly unblocking Plaintiff when it learned about his allegations and counseling Ms. stabin that the University always errs on the side of letting people have their say. (Carp Decl., ECF No. 48, Ex. 2 (Stabin Dep. Tr. 102:21–103:7).) Plaintiff's repeated insinuation that the University selectively or inconsistently enforces the guidelines' prohibition on viewpoint discrimination is simply not supported by the record.

Plaintiff nevertheless suggests that he still may be blocked because the University's social media guidelines are not enshrined in University "policy." But the absence of a "policy" sheds no light on the likelihood that Plaintiff will be blocked again. There is no free-speech requirement that state entities maintain written rules of any kind, whether labeled as guidelines or policy.[1] The fact that the University <u>does</u> maintain rules for content moderation is simply evidence that it takes viewpoint discrimination seriously and does not tolerate it. Indeed, the University's respect for dissenting views is corroborated by the miniscule number of retweets and replies—3 out of more than 2,550—that have been blocked since @UOEquity account was created in 2013. (Larson Decl. iso Supp. Br., ECF No. 46, ¶¶ 3–6.) This years-long track record is far more probative of how the University treats Twitter users—and the likelihood that Plaintiff will be blocked—than how it labels its rules (whether policy, guideline, or practice). Plaintiff also distorts the record when he says that the guidelines, which have always prohibited viewpoint discrimination, are not binding. It is uncontroverted that employees "must abide by" the guidelines and are subject to discipline, up to and including termination, if they fail to follow the guidelines and repeatedly "block someone [based] on viewpoint." (Carp Decl. Ex. 1 (Hunter Dep. Tr. 196:19–197:13, 198:6–16).)

---

[1] It would be absurd to find, for instance, that the University's lack of a "policy" prohibiting murder means that the University tolerates murder.

| 3- | DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF | **Perkins Coie LLP**<br>1120 N.W. Couch Street, Tenth Floor<br>Portland, Oregon 97209-4128<br>Phone:  +1.503.727.2000<br>Fax:  +1.503.727.2222 |
|---|---|---|
| 130383.0008\159758339.2 | | |

### 3. The Court need not—and should not—make findings about Ms. stabin's reasons for blocking Plaintiff.

Plaintiff expended most of the live hearing eliciting evidence that is largely irrelevant to answering the questions presented by the pending motions. At best, Plaintiff's examination of Ms. stabin was arguably relevant to his claim *against her for damages*. But it does not help the Court to decide whether the case is moot or whether a preliminary injunction should issue against the University's Division of Equity and Inclusion.

As mentioned, Ms. stabin made the decision to block Plaintiff alone; she no longer works at the University; her position is now vacant; and the next person to occupy her position will report to a different supervisor in a different department.

Plaintiff urges the Court to find that Ms. stabin's explanation lacks credibility because, in internal emails, she referred to him by his first name, said he was being obnoxious, and said she thought his post was "something about the oppression of white men" "as I recall … if I recall." As an initial matter, none of these statements are inconsistent with Ms. stabin's explanation that she blocked Plaintiff because she thought his post was off-topic and she worried that he would drive other off-topic commenters to the thread. With respect to the last statement specifically, Ms. stabin testified that the equivocation expressed in her email ("as I recall … if I recall") reflects that she did not review Plaintiff's post before hastily dashing off the email, and she did not in fact recall what Plaintiff's post was about. Now that she has had ample opportunity to review the original posts and contextual documents, and to reflect on the circumstances, her memory of Plaintiff's post and why she blocked it is firmer today than it was at the time she wrote the email.

Regardless, the Court should not make any determination about the credibility of Ms. stabin's account because it does not matter to the disposition of the pending motions. The motion to dismiss turns on whether "the challenged conduct can[] reasonably be expected to start up again." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014). Nothing in the truth or falsity of Ms. stabin's direct-examination testimony helps the Court to answer that question.

Similarly, the motion for preliminary relief turns on whether Plaintiff is at "imminent" risk

4- DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

of suffering the "irreparable harm" of being blocked by the Division of Equity and Inclusion social media channel during the remaining pendency of this case. Nothing in the truth or falsity of Ms. stabin's testimony helps the Court to answer that question either. Even if success on Plaintiff's damages claim against Ms. stabin were assured (which it is not), that still would not entitle him to a preliminary injunction against the Division of Equity and Inclusion.

Although a jury may someday judge Ms. stabin's credibility (if Plaintiff's damages claim survives the motion to dismiss and forthcoming motion for summary judgment on grounds of qualified immunity), nothing about the truth or falsity of her testimony drives the outcomes of the motions at bar. The Court should decline Plaintiff's invitation to opine on immaterial matters.[2]

### B. Plaintiff's claims are moot despite his attempt to manipulate this Court's jurisdiction by claiming self-censorship.

In the absence of a reasonable probability that the University will block Plaintiff in the future, his claim for prospective relief is moot. Similarly, Plaintiff's claim for retrospective relief is moot because Defendants have fully satisfied his prayer for damages, leaving Plaintiff without a "personal stake" in the outcome of the case and the Court without any relief to award.

#### 1. Plaintiff bears the burden of proving that his claim for prospective relief is not moot.

Much has been made in the briefing and argument about which party bears the burden of proving mootness. But where an evidentiary question is not close, the burden does not matter. *See, e.g.*, *Southerland v. Garcia*, No. 09-2230, 2010 WL 5173711, at *7 (E.D.N.Y. Dec. 15, 2010) ("Since the evidence overwhelmingly favors defendants, it does not matter who has the burden of proof."). The University has introduced voluminous testimony, account statistics, internal

---

[2] Defendant also take this opportunity to supplement an answer it gave in oral argument. The Court inquired why the University is not admitting that Ms. stabin's blocking of Plaintiff was wrongful. Counsel answered that the University accepts Ms. stabin's explanation of her conduct. But also: both the University and Ms. stabin have testified that they regret that Plaintiff was blocked and, if they had to do it again, would not have blocked him. (*See* Carp Decl. Ex. 1 (Hunter Dep. Tr. 178:23-179:3, 199:18-200:9) & Ex. 2 (Stabin Dep. Tr. 103:21-25).) (To be precise, the University's testimony was that if Plaintiff had notified the University that he had been blocked at the time, it would have unblocked him immediately.) The reason is that the University's social media guidelines require that employees err on the side of letting people have their say.

5- DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

guidelines, correspondence with Plaintiff, and multiple supporting declarations which show that neither Plaintiff nor any other member of the public faces a reasonable probability of being blocked for viewpoint discriminatory reasons in the future. This affirmative presentation of evidence is more than enough to show that Plaintiff's alleged injury is not likely to recur, and that his claim for prospective relief is therefore moot, regardless of who bears the burden.

In any event, the law is clear that a government defendant is entitled to a presumption of good faith when it represents that it will not repeat an injury-causing act. *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). Although Plaintiff contends that, despite this presumption, he does not bear the burden of proving a likelihood of being blocked in the future, his view is at odds with blackletter law about the effect of legal presumptions. In all civil cases, "the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption." Fed. R. Evid. 301. It is thus Plaintiff's burden to "produc[e] evidence to rebut the presumption" that the University will not block him in the future. This common-sense interpretation was previously endorsed by this Court in *Cocina Cultura, LLC v. Oregon*,[3] which held that the presumption of good faith afforded to government entities "place[s] the burden on the plaintiff to show the case is *not* moot." *Cocina Cultura, LLC v. Oregon*, No. 20-01866, 2021 WL 3836840, at *6 (D. Or. Aug. 27, 2021); *see also Rentberry, Inc. v. City of Seattle*, 814 F. App'x 309, 309 (9th Cir. 2020) (holding that the plaintiffs had "not met their burden of showing a 'reasonable expectation' that" the city would injure them again).[4]

### 2. Plaintiff is not self-censoring.

Plaintiff makes almost no effort to persuade the Court that he is in jeopardy of being

---

[3] At the hearing held on December 16, counsel for Defendants mistakenly attributed this holding to another case decided by Judge Immergut, *Wise v. City of Portland*, 539 F. Supp. 1132 (D. Or. 2021). The correct citation is to *Cocina Cultura*. Counsel apologizes for the error.

[4] Defendants acknowledge the confusing statement in *Rosebrock* seeming to suggest that, while government entities have the benefit of a presumption of good faith, government entities also bear the burden of showing mootness. 745 F.3d at 971. As explained above, a presumption imposes the burden on the party rebutting it, *see* Fed. R. Evid. 301, as correctly applied by this Court in *Cocina Cultura*, 2021 WL 3836840, at *6.

6- DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

blocked based on viewpoint in the future by the Division of Equity and Inclusion, and the record contains no evidence that he is. Instead, he seeks to manipulate the Court's jurisdiction with the bare assertion: "I am self-censoring from interacting with @UOEquity in order to avoid being blocked again or permanently banned." (Supp. Gilley Decl., ECF No. 33, at 6 ¶ 19.)[5] If plaintiffs could manufacture jurisdiction with self-serving assertions like this, they would forestall mootness by doing so in every case. Even if Plaintiff's claim of self-censorship were credited, it would make his case no less moot. *See Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 851 (9th Cir. 2007) ("[T]he self-censorship door to [jurisdiction] does not open for every plaintiff.").

But the Court should not credit Plaintiff's self-censorship claim. Plaintiff is a professional provocateur who delights in antagonizing others. He has continued to provoke and antagonize by making inflammatory statements even in the few months that this lawsuit has been pending. (*See* Isaak Decl., ECF No. 47, ¶¶ 2–10.) Plaintiff makes inflammatory statements and invites backlash so that he may promote himself as a victim of "cancel culture." As adduced through his testimony on cross-examination, Plaintiff has written numerous articles and given interviews so promoting himself. It is simply not believable that a person who proudly claims having said that George Floyd died of a drug overdose and that American slaves had it "about as good as it can get" is cowed by the fear that he will be blocked by a public university's low-traffic Twitter sub-account (which he knows no one is managing because Ms. stabin's position is vacant). If Plaintiff is self-censoring, it is not because he is afraid of consequences he will suffer from a not-yet-hired social media sub-account manager; it is because he wants to maintain a lawsuit that he is using to promote himself (indeed, that he has described as a "made-in-heaven case"). As such, in addition to being legally unavailing, Plaintiff's self-serving claim to be self-censoring is simply not believable.

---

[5] This is in fact *the second* way in which Plaintiff is manipulating the Court's jurisdiction. His first manipulation was in not conferring with the University before filing his lawsuit and motion for TRO, as required by the rules, (*see* ECF No. 7), to avoid the University unblocking him before he filed. The consequence of this choice—as Plaintiff's counsel immediately pointed out to Defendant's counsel, (*see* Park Decl., ECF No. 19, Ex. 3 at 5), was to shift the jurisdictional question from standing (plaintiff's burden) to mootness (typically, defendant's burden).

7-  DEFENDANTS' RESPONSE TO
    PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

      **3.     Plaintiff's claim for retrospective relief against Ms. stabin is also moot because he has received all the damages for which he prayed.**

Plaintiff's claim for retrospective relief is also moot. The "personal interest" needed to support jurisdiction when a claim is filed must "exist[] throughout the proceedings." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). This means that satisfaction of a requested damages award moots a claim because it deprives the plaintiff of his "personal stake" in its outcome and leaves the court without any "relief" to award. *See, e.g.*, *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1145 (9th Cir. 2016) ("[A] claim [for damages] becomes moot once the plaintiff actually receives all of the relief to which he or she is entitled on the claim."); *S. Cal. Painters & Allied Trades v. Rodin & Co.*, 558 F.3d 1028, 1036 (9th Cir. 2009) (holding that damages claim was moot where defendant had paid all requested damages); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (same). As the Supreme Court has long warned, the federal courts do not exist to resolve "abstract dispute[s] about the law," *Alvarez v. Smith*, 558 U.S. 87, 93 (2009), and their jurisdiction extends only to the determination of "real, earnest, and vital controversy between individuals." *Chi. & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892); *cf. also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974) ("The assumption that if respondents have no standing to sue, no one would have standing, is not a reason to find standing."). When, as here, a plaintiff receives all the relief he requested, then the claim has served its purpose and is moot.

    **C.    Plaintiff is not entitled to a preliminary injunction.**

        **1.     Plaintiff cannot show irreparable harm.**

To obtain a preliminary injunction, one must show a likelihood of irreparable harm. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). Indeed, that is the whole point of a preliminary injunction. Ordinarily, adjudication of a case's merits can wait for a jury. Preliminary injunctions are available only when relief cannot wait because harm is ongoing or imminent.

Plaintiff urges the Court to skip over this requirement and adjudicate the merits questions in his favor. It would be error to do so. Where a movant "has failed to show irreparable harm, [the Court] need not address its likelihood of success on the merits." *Perfect 10, Inc. v. Google, Inc.*,

8-    DEFENDANTS' RESPONSE TO
PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

653 F.3d 976, 981 n.3 (9th Cir. 2011); *see also D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019) ("That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit."). The rule that preliminary injunction movants must show irreparable harm, independent of the strength of their merits case, applies equally to First Amendment claims. *See Dish Network Corp. v. Fed. Commc'ns Comm'n*, 636 F.3d 1139, 1144 (9th Cir. 2011). And despite interesting questions about who bears the burden with respect to mootness questions, there is no debate about who bears the burden of showing irreparable harm: Plaintiff does. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

For reasons already discussed, the record contains no evidence that the future administrator of the Division of Equity and Inclusion's social media channels is going to block Plaintiff. Without any indication of irreparable harm, there is no reason to issue a preliminary injunction.

  **2.** **In the absence of irreparable harm, the Court should not consider the merits of Plaintiff's First Amendment claim, but even if it does, Plaintiff is not likely to succeed on the merits of his claim.**

Plaintiff is also not likely to succeed on the merits of his First Amendment claim because the @UOEquity account is at most a limited public forum and Plaintiff was blocked for reasons unrelated to his viewpoint. As an initial matter, the Court need not reach the merits of Plaintiff's claim because, as discussed, (1) the lack of an irreparable injury precludes the Court from granting a preliminary injunction regardless of whether Plaintiff is likely to succeed on the merits of his claim, and (2) allegations of an isolated instance of <u>past</u> misconduct are not germane to the merits of injunctive relief for an alleged <u>future</u> injury. *Perfect 10*, 653 F.3d at 981–82 & n.3 (first point); *D.T.*, 942 F.3d at 326 (same); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (second point).

Nevertheless, in the unlikely event that the Court reaches the question of whether Plaintiff is likely to succeed on the merits of his claim, it should find that Plaintiff is not likely to succeed. Although the @UOEquity account may qualify as a public forum, it is limited to discussions about diversity, equity, and inclusion. *See Koala v. Khosla*, 931 F.3d 887, 902 (9th Cir. 2019) ("[L]imited public fora are by definition created by the state for particular purposes . . . ."). For example, the

9- DEFENDANTS' RESPONSE TO
PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

handle for the account ("@UOEquity"), description of the account ("Celebrating Diversity" and "Facilitating Equity and Inclusiveness"), and banner for the account ("Division of Equity and Inclusion") prominently displayed at the top of its main page immediately and unambiguously inform users of the forum's scope, and the account's posts are consistently limited to the topics of diversity, equity, and inclusion. *See Garnier v. Poway United Sch. Dist.*, No. 7-cv-2215-W, 2019 WL 4736208, at *10 (S.D. Cal. Sept. 26, 2019) ("Government intent is critical in [creating a limited public forum], which in turn is evaluated by looking at the government's policy and practice." (quotation omitted)). The social media guidelines also provide that the University may remove comments that are off topic, and this is precisely what Ms. stabin testified to doing in this case.

Although Plaintiff alleges that the University does not routinely police off-topic comments, he offers no evidence showing the proportion of off-topic comments, if any, posted and allowed to remain on the account. He simply points to the sample of dissenting comments submitted into the record by the University. Not only has Plaintiff made no attempt to demonstrate that this sample is representative, but each of the sampled comments pre-dating Plaintiff's blocking on June 14, 2022, are responsive to, and critical of, some aspect of a post by the account. That is, they are not comments which should have been removed as being off topic. The sample, as such, offers insufficient evidence for Plaintiff to carry his burden of showing that the University failed to consistently limit activity in the forum to the clear and unambiguous purposes for which it was created. And because the account is a limited public forum, the First Amendment allowed Ms. stabin to block Plaintiff for posting what she believed was an off-topic comment. *See Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1178 (9th Cir. 2022) ("In a limited public forum, restrictions on speech and speakers are permissible so long as they are viewpoint neutral and reasonable in light of the purpose served by the forum." (quotation omitted)).

### III.   CONCLUSION

For the foregoing reasons, Defendants urge the Court to dismiss this case as moot, or, if it finds jurisdiction, to deny Plaintiff's motion for a preliminary injunction.

10- DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

DATED:  January 3, 2023

**PERKINS COIE LLP**

By: */s/ Misha Isaak*
    **Stephen F. English**, OSB No. 730843
    SEnglish@perkinscoie.com
    **Misha Isaak**, OSB No. 086430
    MIsaak@perkinscoie.com
    **Jeremy A. Carp**, OSB No. 173164
    JCarp@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209-4128
    Telephone: +1.503.727.2000

*Attorneys for Defendants tova stabin and the Communications Manager*

11- DEFENDANTS' RESPONSE TO PLAINTIFF'S POST-HEARING BRIEF

130383.0008\159758339.2

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222