IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRUCE GILLEY, an individual,                    No. 3:22-cv-01181-HZ

               Plaintiff,                    OPINION & ORDER

v.

TOVA STABIN, in her individual
capacity; and the COMMUNICATION
MANAGER of the Division of Equity
and Inclusion at the University of Oregon,
in his or her official capacity,

               Defendants.

Endel Kolde
Institute for Free Speech
1150 Connecticut Ave NW, Ste 801
Washington, DC 20036

D. Angus Lee
Angus Lee Law Firm, PLLC
9105 NE Hwy 99, Ste 200
Vancouver, WA 98665

       Attorneys for Plaintiff

Misha Isaak
Jeremy A. Carp
Stoel Rives LLP
760 SW 9th Ave, Ste 3000
Portland, OR 97205

Stephen F. English
Perkins Coie, LLP
1120 NW Couch St, 10th Floor
Portland, OR 97209

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

      This matter comes before the Court on remand from the Ninth Circuit. The Ninth Circuit vacated this Court's denial of Plaintiff's motion for a preliminary injunction and remanded for further proceedings. For the following reasons, the Court issues a limited preliminary injunction.

## BACKGROUND

      This case arises from Defendant tova stabin's[1] blocking of Plaintiff on the Twitter[2] page for the Division of Equity and Inclusion at the University of Oregon while Defendant stabin managed the Division's Twitter account. She has since retired. Plaintiff was blocked on June 14, 2022, after posting a response to a post from Defendant stabin on the @UOEquity Twitter account. The Court recited the facts in detail in its previous Opinion and Order and incorporates them by reference here. Op. & Ord. 2-8, ECF 57.

      Plaintiff filed this lawsuit on August 11, 2022, alleging violation of his First Amendment rights and seeking injunctive relief. Compl., ECF 1. He also moved for a temporary restraining order and a preliminary injunction. Pl. Mot., ECF 2. Defendants unblocked him on August 12,

---

[1] Defendant stabin's filings state that she spells her name with all lowercase letters.

[2] Twitter is now known as X, but because it was known as Twitter when the blocking occurred, the Court refers to the company by that name when reciting the facts.

2022. Defendants moved to dismiss for lack of jurisdiction, arguing that the case was moot based on, among other things, the prompt unblocking of Plaintiff after the lawsuit was filed. Def. Mot. to Dismiss, ECF 23, 35. The Court held oral argument on both motions on December 16, 2022. On January 26, 2023, the Court issued an Opinion and Order denying both motions. ECF 57. Plaintiff appealed. On March 8, 2024, the Ninth Circuit issued a memorandum opinion vacating the denial of a preliminary injunction. ECF 67. A mandate issued on May 23, 2024. ECF 70. The parties filed supplemental briefs on whether a preliminary injunction should be granted and the appropriate scope of such an injunction. Pl. Br., ECF 76; Def. Br., ECF 77.

## STANDARDS

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test, which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in the plaintiff's favor, assuming the other two elements of the *Winter* test are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing of one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion

by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).[3]

"[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014) (internal quotations omitted). The plaintiff must still establish the other three *Winter* factors. *Id.* at 582-83 ("We do not simply assume that these elements collapse into the merits of the First Amendment claim.") (internal quotations omitted).

## DISCUSSION

The Court first concludes that a preliminary injunction must issue, and then addresses the scope of that injunction. Finally, the Court stays this case for 60 days to allow the parties to explore settlement.

## I.    Whether to Issue a Preliminary Injunction

The Court concludes that a preliminary injunction must issue. In its previous Opinion and Order, the Court held that Plaintiff had raised serious questions on the merits of his first and fourth claims for relief, which alleged that his First Amendment rights were violated when he was blocked on Twitter and that application of specific provisions of the University's social media guidelines to him violated the First Amendment. Op. & Ord. 25, 31-32. The Ninth Circuit

---

[3] Defendants cite *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1578 (2024) to suggest that the Ninth Circuit's "serious questions" test is no longer viable. Def. Br. 2 n.1. The case invalidated the Sixth Circuit's test for issuing a preliminary injunction under the National Labor Relations Act, which asked only "whether there is reasonable cause to believe that unfair labor practices have occurred" and "whether injunctive relief is just and proper." 144 S. Ct. at 1575 (internal quotations omitted). The Supreme Court held that the traditional *Winter* factors governed. *Id.* at 1577. Defendants have not convinced the Court that *Starbucks* invalidated the "serious questions" test, which applies the *Winter* factors.

affirmed this conclusion. Mem. Op. 5. The Ninth Circuit rejected this Court's conclusion that Plaintiff had failed to adequately allege a future irreparable injury. *Id.* Thus, the first two *Winter* factors favor issuance of a preliminary injunction. The balance of equities and public interest also favor issuance of a preliminary injunction. *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) ("The fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that ... the balance of hardships tips sharply in [Plaintiffs'] favor. . . . "[And] it is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotations omitted).

Defendants argue that no preliminary injunction should issue. Def. Br. 6-7. First, they point to this Court's prior holding that the balance of equities and the public interest weighed in Defendants' favor. *Id.* at 6. Defendants argue that the Ninth Circuit's opinion did not disturb that conclusion because it did not address those factors. *Id.* (citing *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) ("[A] district court could not revisit its already final determinations unless the mandate allowed it[.]")). Defendants' argument misses the mark. The Court originally held that the balance of equities and the public interest favored Defendants because Defendants were not likely to block Plaintiff in the future and Plaintiff lacked standing to bring a broader challenge to the social media guidelines on behalf of others, so the University of Oregon would be unnecessarily burdened by the issuance of an injunction. Op. & Ord. 35. The Ninth Circuit reversed the Court's conclusion on whether Plaintiff had shown irreparable harm (a likelihood of future blocking), which requires this Court to revisit its analysis on the balance of equities and the public interest. Having done so, the Court concludes that the balance of equities and the public interest favor Plaintiff. It is in the public interest to prevent violation of First Amendment rights, and Defendants will not be unduly burdened by the narrow injunction the Court will issue.

Defendants' second argument is that "the factual underpinnings of the Ninth Circuit's decision on irreparable harm have changed." Def. Br. 6. They state that the University has hired a new Communications Manager for the Division of Equity and Inclusion, but she has not yet started. *Id.* at 7. They also state that she will receive training on the social media guidelines and the bar on viewpoint-based blocking or censorship. *Id.* They state that the new Communications Manager will work within a different department and report to a different supervisor. *Id.* Finally, they state that "the University has created a new oversight mechanism to ensure users are not blocked for viewpoints they express." *Id.* As a result of the new oversight, Defendants assert, the Communications Manager "cannot act alone when determining whether to block users," which "eliminates the risk of 'a rogue employee'" identified by the Ninth Circuit. *Id.* The Court rejects Defendants' argument. The changes Defendants highlight are all new, and some appear not to have been implemented yet. Their efficacy is unknown. The Court welcomes the efforts the University is making to ensure that First Amendment rights are upheld, but at this time Defendants have not made a strong enough showing of changed circumstances to justify departing from the Ninth Circuit's conclusion that Plaintiff has shown irreparable harm. Having concluded that an injunction must issue, the Court considers its scope.

## II.    Scope of Preliminary Injunction

Although Plaintiff raised a facial challenge to the University of Oregon's social media guidelines as overbroad, he does not seek a broad preliminary injunction, instead requesting one tailored to him and his claims. Pl. Br. 6. The Court therefore confines its analysis to an as-applied challenge.[4] Plaintiff asks this Court to prevent the Communications Manager of the

---

[4] The Ninth Circuit remanded the case to this Court "to reconsider whether Gilley has standing to seek pre-enforcement facial relief." Mem. Op. 4. Because Plaintiff states that he is not seeking pre-enforcement facial relief at this time, the Court will not address the issue now.

Division of Equity and Inclusion from enforcing several provisions of the guidelines against him.

Pl. Br. Ex. 1. In relevant part, the University's social media guidelines read as follows:

### ENGAGEMENT: MONITORING AND RESPONDING TO COMMENTS:

When launching a social media account, be prepared` to monitor the comments that will get posted. As a public university that values freedom of speech and a robust exchange of ideas, you should err on the side of letting people have their say when commenting on our social media properties. When appropriate, engage with commenters and repliers, even if it's just to like or reply to their comments or to acknowledge their criticism. Don't delete comments or block users because they are critical or because you disagree with the sentiment or viewpoint. But you may remove comments, messages and other communications and restrict access to users who violate the following guidelines:

- Are violent, obscene, profane, hateful or racist or otherwise use offensive or inappropriate language
- Threaten or defame
- Are out of context, off topic or not relevant to the topic at hand
- Disclose personally identifiable information, such as addresses or phone numbers
- Include copyrighted materials
- Fall under the category of spam
- Suggest or encourage illegal activity
- Solicit, advertise or endorse a third-party business or service
- Are multiple successive posts by a single user
- Are repetitive posts copied and pasted by multiple users

On Facebook, Twitter and Instagram, we have the option of "hiding" spam, inappropriate or off-topic comments, which means it will only be seen by the person who wrote it and their friends.

Op. & Ord. 6-7.

Plaintiff asks the Court to enjoin the Defendant Communications Manager from

enforcing against him the provisions against "hateful," "racist," or "otherwise offensive" speech;

and against speech that is "out of context," "off topic," or "not relevant." Pl. Br. 5 and Ex. 1. He

also asks the Court to enjoin the Defendant Communications Manager from blocking or hiding

his posts because the content is deemed "obnoxious," is "talking something about the oppression

of white men," is critical of the University of Oregon or the Division of Equity and Inclusion, or

because it promotes views with which the Communications Manager disagrees. *Id.* He submits a proposed injunction. Pl. Br. Ex. 1.

Defendants raise two objections to Plaintiff's proposed injunction. First, they object that it reaches beyond the Communications Manager to "the manager's agents, servants, employees, and all person[s] in active concert or participation with them who receive actual notice of this injunction[.]" Def. Br. 8 (citing Pl. Br. Ex. 1 at 2). They argue that such a reach is too broad, and that the Communications Manager alone should be enjoined. *Id.* (citing *Zepeda v. U.S. INS*, 753 F.2d 719, 727 (9th Cir. 1983)).

A preliminary injunction can bind only the following: (1) the parties; (2) the parties' officers, agents, servants, employees, and attorneys; and (3) other persons who are in active concert or participation with anyone described by the two preceding categories. Fed. R. Civ. P. 65(d)(2). The order only binds those who receive actual notice of it. *Id.* Plaintiff's formulation of the proposed injunction is consistent with Rule 65(d)(2). *Zepeda*, the case on which Defendants rely, also cites the provision. 753 F.2d at 727. Other courts in this district have issued preliminary injunctions in accordance with the categories enumerated in Rule 65(d)(2). *E.g.*, *OmniGen Rsch. v. Yongqiang Wang*, No. 6:16-CV-00268-MC, 2017 WL 2729266, at *3, *6 (D. Or. Jan. 10, 2017) (enjoining the defendants and their agents, servants, and those acting in active concert with them from retaining or using the plaintiffs' trade secrets). Contrary to Defendants' suggestion, this formulation does not reach "everyone [the Communications Manager] works with," such as managers of other social media accounts in unrelated departments. *See* Def. Br. 8. The injunction would not reach the Communications Manager's coworkers unless they fell into one of the Rule 65(d)(2) categories. Consistent with this, Defendants' proposed injunction would apply to any other person administering the @UOEquity account. Def. Br. Ex. 1 at 2.

Defendants' second objection to Plaintiff's proposed injunction is that it "is needlessly complex and difficult to implement." Pl. Br. 8. Defendants argue that the preliminary injunction "should simply order the Communications Manager not to block Gilley's account." *Id.* The Court agrees that Plaintiff's formulation can be streamlined, but the injunction Defendants propose does not adequately address the issues raised by Plaintiff and addressed by the Ninth Circuit. The Ninth Circuit instructed this Court "to reconsider whether Gilley has standing to seek pre-enforcement facial relief." Mem. Op. 4. Plaintiff does not currently seek pre-enforcement facial relief, but he does seek pre-enforcement relief from the guidelines as they were applied to him. The Court must address that request.

At the hearing, Defendant stabin testified that she blocked Plaintiff because she thought his post was off topic. Op. & Ord. 25. There was evidence in the record supporting that position. *Id.* at 25-26. Plaintiff advanced the position that he was blocked because Defendant found his post "hateful," "racist," or "otherwise offensive." Evidence in the record supported this position: Defendant stabin sent an email to a colleague in which she stated that Plaintiff "was not just being obnoxious, but bringing obnoxious people to the site some." *Id.* at 26. In another email, she stated that Plaintiff was "as I recall talking something about the oppression of white men, if I recall." *Id.* In short, there is a genuine factual dispute over which of the provisions of the social media guidelines was applied to Plaintiff. Plaintiff correctly states that this dispute affects the appropriate scope of a preliminary injunction. Pl. Br. 5.

Plaintiff asserts that he has standing to bring a pre-enforcement challenge to the social media guidelines because they have been applied to him in the past. *Id.* at 1. The Court previously held that Plaintiff lacked standing to bring a pre-enforcement challenge because (1) he failed to show a reasonable likelihood that the University would enforce the social media

guidelines against him again, and (2) the consequences he faced did not support a pre-enforcement challenge. Op. & Ord. 29-31. The Ninth Circuit's conclusion that Plaintiff has alleged irreparable injury resolves the first issue in Plaintiff's favor. The Ninth Circuit also appears to have concluded that being "blocked from viewing a government account for months" is a sufficient consequence to support standing. Mem. Op. 5. The Court therefore concludes that Plaintiff has standing to bring a pre-enforcement challenge. To the extent one of the two identified categories of the social media guidelines was not applied to Plaintiff, he has standing to challenge it.

Plaintiff has shown that the two provisions of the social media guidelines he challenges create a risk of censoring speech that is protected by the First Amendment. As Plaintiff points out, speech that is "hateful," "racist," or "otherwise offensive" is protected by the Constitution. Pl. Br. 3 (citing *Snyder v. Phelps*, 562 U.S. 443, 454 (2011); *Cohen v. California*, 403 U.S. 15, 25 (1971); *Am. Freedom Def. Initiative v. King County*, 904 F.3d 1126, 1131 (9th Cir. 2018)). The Court held that the @UOEquity account was a limited public forum, meaning that any restrictions on speech must be reasonable and viewpoint-neutral. Op. & Ord. 25.[5] Plaintiff is correct that the provisions allowing the Communications Manager to block "hateful," "racist," and "otherwise offensive" speech create a risk of viewpoint discrimination because "[w]hat is offensive or hateful is often in the eye of the beholder." Pl. Br. 4. If Plaintiff was blocked for posting "all men are created equal" because the post was viewed as hateful, racist, or otherwise offensive, such blocking would violate the Constitution. Deleting or hiding the post for that reason would also violate the Constitution.

---

[5] The Ninth Circuit did not disturb that conclusion.

10 – OPINION & ORDER

The provision of the social media guidelines addressing speech that is off topic also creates a risk that protected speech will be censored. The facts of this case illustrate as much. Plaintiff tweeted "all men are created equal" in response to Defendant stabin's original post, which was a "racism interruptor" that read, "You can interrupt racism" with a prompt that stated, "It sounded like you just said _____. Is that really what you meant?" Op. & Ord. 2-3. Assuming that Defendant stabin blocked Plaintiff because she thought his post was off topic, as she testified, Plaintiff has a strong argument that his post was not off topic. The statement "all men are created equal" is relevant to discussions of racism. There may be a point at which a post is plainly off topic and could properly be deleted or hidden, but there is also a gray area in which protected speech may be improperly censored.

The third category of speech restrictions Plaintiff wishes to enjoin is not based on the social media guidelines. It includes speech that is "obnoxious" or "talking something about the oppression of white men," or critical of the University of Oregon or the Division of Equity and Inclusion, or speech that promotes views with which the Communications Manager disagrees. Whether something is "obnoxious" is subjective. The other aspects of this category also reflect expression of a viewpoint. The Court concludes that injunctive relief addressing the two provisions of the social media guidelines discussed above covers the items in this category.

In sum, Plaintiff is entitled to preliminary injunctive relief enjoining the Defendant Communications Manager and others covered by Rule 56(d)(2) from (1) muting, deleting, or hiding his posts on @UOEquity because they are "hateful," "racist," "otherwise offensive," or "out of context," "off topic," or "not relevant"; and (2) blocking Plaintiff from interacting with @UOEquity.

Finally, Plaintiff asks the Court to waive the security requirement of Rule 65(c). Pl. Br. 8. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotations omitted). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (quotation marks and brackets omitted). The Court concludes that Plaintiff should not be required to pay a security because the injunction the Court will enter is narrow and is not likely to harm Defendants.

## III.    Stay of the Case

In their joint status report to the Court on June 10, 2024, both sides indicated that after the Court resolved the preliminary injunction issue, they would like the case to be stayed for 60 days to explore settlement. ECF 72. The Court therefore extends the stay of this case for 60 days. At the conclusion of the 60-day period, the parties are to file another joint status report indicating whether they expect to settle this matter or expect litigation to proceed.

## CONCLUSION

The Court GRANTS IN PART Plaintiff's Motion for Preliminary Injunction [2]. The Communications Manager of the University of Oregon's Division of Equity and Inclusion, as well as her agents, servants, and employees, and persons in active concert or participation with her who receive actual notice of this injunction ARE HEREBY ENJOINED from (1) hiding, muting, or deleting posts by user @BruceDGilley on the @UOEquity X account because they

are "hateful," "racist," or "otherwise offensive," or "out of context," "off topic," or "not

relevant"; and (2) blocking user @BruceDGilley from interacting with @UOEquity. This

injunction takes effect immediately and remains in effect during the pendency of this lawsuit

unless modified by a final judgment or other order of the Court, the agreement of all parties, or

any binding change in the law. The Court STAYS this case for 60 days. A joint status report is

due on the final day of the 60-day period.

IT IS SO ORDERED.


DATED:＿＿＿＿ July 23, 2024 ＿＿＿＿.



MARCO A. HERNÁNDEZ
United States District Judge

13 – OPINION & ORDER